**TOMFORDE et al. v. MITCHELL CONST. CO. et al.**

No. 9657.

Court of Civil Appeals of Texas. San Antonio.

March 11, 1936.

Dielmann & Forster, of San Antonio, for appellants.

Nowlin Randolph and Moursund, Moursund & Bergstrom, all of San Antonio, for appellees.

SMITH, Chief Justice.

Star Brick & Tile Company, hereinafter referred to as "Star Company," was a corporation engaged in the manufacture and sale of brick and tile, its plant being located at Elmendorf, in Bexar county. Mitchell Construction Company was, apparently, the Star Company's largest customer. In fact, the record shows that for at least the last year or more before the Star Company went out of business the Mitchell Company advanced most of the funds upon which the Star Company operated, taking the latter's products in settlement for those advances. These transactions were evidenced by written contracts, bills of sale, pay roll statements, ledger sheets, and checks, running back to early in 1931, and culminating in a contract made on August 10, 1932. The obligations and liabilities of the parties were fixed in those contracts and other instruments, which were in evidence, and were unchallenged. There was some parol testimony from appellants and their witnesses of extraneous facts designed to discredit the written evidence, but it was not of such nature as to warrant jury findings completely at variance with the contracts, bills of sales, and other writings made by and between the parties long before the Star Company closed out its business, and delivered most of its stock on hand to the Mitchell Company, in final settlement of their respective liabilities.

The suit was brought by plaintiffs to recover of the Star Company, Mitchell Construction Company, and Henry C. King, Jr., the amounts of back salaries alleged to be due them from the defunct Star Company, of which Mr. King had been president. They alleged that in 1931, and up to August, 1932, the Star Company had on hand "several thousand dollars worth of brick and tile, which it had been selling and daily offering for sale," wherefore the sale of the bulk of the stock to the Mitchell Company on August 10, 1932, without the notice to creditors required by the Bulk Sales Law (R.S.1925, art. 4001), was in contravention of that law, and rendered the purchaser liable for the debts of the seller. In the alternative, plaintiffs alleged that said sale was a voluntary sale, without consideration, or not in consideration of a pre-existing debt, and left the seller without other property in this state subject to execution, and that therefore, under the provisions of article 3997, R.S.1925, the same was void as to the seller's creditors, including plaintiffs, wherefore the property should be impounded, and the purchaser should account therefor to said creditors, to whom the purchaser was liable, ratably. As a further alternative, plaintiffs alleged that said sale was made with the intent to delay, hinder, and defraud said creditors, in violation of the provisions of article 3996, R.S.1925, whereby the purchaser became liable to plaintiffs, ratably, to the amount of the value of said stock. Plaintiffs, again pleading in the alternative, alleged that long prior to said sale the charter of the Star Company and its right to continue in business had been forfeited, but that its business was nevertheless continued with the

knowledge and consent of its president, Henry C. King, Jr., who thereby became liable for the corporate debts. Plaintiffs further pleaded, again in the alternative, that at the time of said sale in bulk to Mitchell Construction Company, the Star Company was insolvent and in failing circumstances, was unable to pay its current liabilities, had ceased to manufacture its products, and said sale included all its assets, without payment of its existing debts, wherefore the assets passing into the possession of the purchaser were impressed with an equitable lien in favor of said creditors, to whom the purchaser became liable for such goods as it had since disposed of, and that remaining on hand should be sold and the proceeds applied towards satisfying said lien. Plaintiffs recovered in accordance with said allegations.

The jury found that at the time it ceased to do business the Star Company owed the plaintiffs specific sums in back salaries; that Henry C. King, Jr., was an officer of said company, and that said obligations were incurred, after the forfeiture of the corporate charter, with his knowledge, approval, and consent, in certain amounts specified in the findings; that, by virtue of the contract of August 10, 1932, the Star Company sold and transferred to Mitchell Construction Company all of its merchandise and material on hand for the purpose of hindering, etc., its creditors, and was not possessed of other property, subject to execution, sufficient to pay its existing debts; that Mitchell Construction Company knew, at the time, that Star Company was insolvent, and made said contract of August 10, 1932, for the purpose of hindering, etc., said creditors; that the reasonable market value of the property transferred from the Star Company to the Mitchell Company was $7,500. The trial court rendered judgment in favor of Mitchell Construction Company, notwithstanding the jury findings, and in favor of plaintiffs in certain amounts against the Star Company and King. Plaintiffs appealed from that part of the judgment denying recovery to them against the Mitchell Construction Company. The Star Company and King have not appealed.

■ In their first proposition plaintiffs contend that the sale to the Mitchell Construction Company was made in contravention of the Bulk Sales Law. Articles 4001, 4002, R.S.1925. We overrule the proposition, for the reason that that law has no application to the sale, directly by the manufacturer, of the products made by such manufacturer. Axtell Co. v. Word (Tex. Civ.App.) 29 S.W.(2d) 421; Yeager v. Dallas Coffin Co. (Tex.Civ.App.) 69 S.W. (2d) 493; Grimes v. Huntsville State Bank (Tex.Civ.App.) 12 S.W.(2d) 1087; Continental State Bank v. Trabue (Tex.Civ. App.) 150 S.W. 209.

■ It is apparent from the record that the Star Company transferred to the Mitchell Company most of its products then on hand. The crux of the controversy seems to be whether that transfer was but the final performance of a series of prior contracts, whereby the Star Company assigned its products to the Mitchell Company in consideration, in part, of advances made, and in part for cash, for the current output of the manufacturer. We have reached the conclusion, based upon the undisputed written contracts and recurring settlements made by the parties during the eighteen months preceding, and leading up to the final contract of August 10, 1932, that the transaction by which the bulk of the Star Company's stock was transferred to the Mitchell Company was but a settlement of their reciprocal obligations, which were fixed and expressed long before the ultimate settlement thereof by the transfer of August 10. That being so, the findings of the jury—obviously based upon the oral testimony of plaintiffs concerning fragmentary and isolated transactions and purely speculative and conjectural estimates, which, when properly analyzed, cannot be given probative effect—became immaterial, and were properly disregarded by the trial judge. It would serve no good purpose to undertake to set out even the substance of all the testimony in the statement of facts, a large portion of which was unnecessary, and irrelevant to the true issues. It is true, as plaintiffs contend, that the Star Company had been in a failing condition for some time before it ceased to do business, and it is likewise true that the Mitchell Company knew this, for it was constantly advancing money necessary to keep the Star Company's plant operating, for which it was paid "in trade." The parties contracted with this in mind; the Star Company agreeing to manufacture the products required by the Mitchell Company in its construction operations, and at prices agreed upon by them in advance. The final settlement was made upon the basis of this prior agreement. And those prices were probably below the market, which was in

those days at a low ebb, as is known to all. But that fact, that those prices were below the market, did not render that settlement fraudulent, or give it the legal effect of hindering, delaying, or defrauding other creditors of the failing concern.

We cannot hold, under the record presented, that the trial judge abused his discretion in rendering the judgment appealed from, which will therefore be affirmed.