52622. MARLICK CONSTRUCTION COMPANY, INC. v. T. LYNN DAVIS REALTY & AUCTION COMPANY, INC. et al.

SMITH, Judge.

Marlick Construction Co., Inc. brought an action against T. Lynn Davis Realty & Auction Co., Inc. et al. demanding an accounting of the net proceeds of an auction sale conducted by the defendant Auction Co. The defendant Auction Co. moved for summary judgment, and the trial court granted the motion. The plaintiff appeals the grant of summary judgment in favor of the defendant Auction Co.

Marlick Construction Co., Inc. obtained a judgment against Winston Homes, Inc. on March 10, 1975. By letter of May 9, 1974, Winston Homes, Inc. engaged T. Lynn

Davis Realty & Auction Co., Inc. to sell at an auction sale on the premises on June 10, 1974 "trucks, cranes, forklifts, saws, presses, assembly line items and *other chattels and inventory now located on the premises* of Winston Homes, Inc. Sandersville, Georgia." (Emphasis supplied.) The auction took place and resulted in the sale of the above equipment "chattels and inventory" located at the Sandersville plant of Winston Homes, Inc., to various purchasers, there being no complete housing packages involved in the sale.

The appellant contends that the auction sale was subject to the bulk transfer provisions of the Uniform Commercial Code. Code § 109A-6—108 (3) provides in pertinent part the following: "The auctioneer shall: (a) receive and retain the list of creditors and prepare and retain the schedule of property for the period stated in this Article (109A-6—104); and (b) give notice of the auction personally or by registered or certified mail at least 10 days before it occurs to all persons shown on the list of creditors and to all other persons who are known to him to hold or assert claims against the transferor." Appellant alleges that the auctioneer knew that the auction constituted a bulk transfer but failed to give notice to the creditors; and accordingly, he should be liable to the creditors of the transferor for the sums owing to them from the transferor up to but not exceeding the net proceeds of the auction. See Code § 109A-6—108 (4).

The issue presented on appeal is whether the auction sale was a "bulk transfer" as defined by the Uniform Commercial Code and therefore subject to the Code provisions regulating bulk transfers by sale at auction. Appellee contends that the transaction was not subject to the Bulk Transfer Article because Winston Homes, Inc., was not an enterprise whose principal business was the sale of merchandise from stock. See Code § 109A-6—102 (3). Appellee further contends that the auction did not transfer "materials, supplies, merchandise or other inventory" and was thus not a bulk transfer. See Code § 109A-6—102 (1). Of course, the appellant argues the opposite position on both issues.

The question is: Was Winston Homes, Inc. engaged in an enterprise subject to the Bulk Transfer

Article of the Uniform Commercial Code? "The enterprises subject to this Article are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell." Code § 109A-6—102 (3).

The record shows that Winston Homes, Inc. was in the business of assembling and selling premanufactured housing unit packages, said packages to be used to build the house at the home site. These units were put together pursuant to a purchase order which specified the model, design and any options desired by the purchaser of the housing package with a portion of it being manufactured by Winston Homes, Inc., from lumber and materials they had in stock and the remainder of the package was made up from other merchandise and inventory they had on hand such as bathroom fixtures, appliances, roofing, carpeting, etc. These units were not stocked as such at the Sandersville plant; however, the materials, supplies and equipment used to manufacture and make up the packages were kept in stock at Winston Homes, Inc., Sandersville plant, separate and apart from each other prior to being assembled as a housing package. When an order was received these various materials and supplies that were in stock were used by Winston Homes, Inc. to make up and assemble the housing package. The materials that were kept in stock for the purpose of making up the housing packages and sold at auction included but was not limited to lumber, prefinished doors, paneling, molding, roofing, bathroom fixtures, appliances, premanufactured cabinets, carpeting, etc. These items were not sold individually from stock by Winston Homes, Inc. in its course of business but were used to make up the component parts of a premanufactured housing package, said package being made up by Winston Homes, Inc. at its plant from the items in stock set out above and the package shipped to the purchaser as he needed them. The entire package was not shipped at one time. On at least one occasion, Winston Homes, Inc. sold directly to the owner-builder.

The items sold which numbered in the hundreds, included fixtures, trucks, cranes, forklifts, saws, presses and assembly line items in addition to *"other chattels and*

*inventory now located on the premises,"* (Emphasis supplied.) as per a letter dated May 9, 1974 to T. Lynn Davis Realty and Auction Co., Inc. from Winston Homes, Inc. In addition to setting out what would be sold at the auction sale, the letter set forth how the sale would be advertised, how the auction would be served, the commission schedule, noncommission sales and the date and place of sale.

The cases hold that the bulk sales law applies to no particular class of creditors of the merchant but to all classes (*C. M. Miller Co. v. Lunceford,* 54 Ga. App. 21 (186 SE 766)) secured as well as unsecured (*National Cash Register Co. v. Stubbs,* 29 Ga. App. 543 (116 SE 44)).

The meaning of the phrase "goods, wares, and merchandise" has been defined in only a few cases. This definition as applied to the business, set out in Hart v. Brierley, 189 Mass. 598 (76 NE 286), seems to be analogous to this case. This case held that biscuits and crackers put up in boxes or barrels by a *wholesale* biscuit company for the wholesale market were within a statute regulating the sale of goods, wares, or merchandise in bulk. A later case held that the sale-in-bulk statute was intended to prevent a trader from disposing of his stock of merchandise in a manner outside of his usual course of business. Gallus v. Elmer, 193 Mass. 106 (78 NE 772). The statute does apply to the sale of "goods, wares and merchandise," and not to a service performed or sold.

The facts in the record do not affirmatively show whether Winston Homes, Inc.'s principal business was the sale of merchandise from stock, which was incidentally assembled prior to shipment, or whether the principal business was the service of assembling the various units. Thus, there remains a question of fact as to whether the sale of merchandise from stock was Winston's principal business. This question must be resolved by a jury. Various factors to be considered in making this determination would be percentage of business, gross receipts, net profits, etc., generated from the sale of merchandise as opposed to the service of assembling the units.

If the jury determines that the principal business of Winston Homes, Inc. was the sale of merchandise from

stock, rather than the sale of a service, then the auction did transfer "materials, supplies, merchandise, or other inventory" as defined under the Uniform Commercial Code, and would be subject thereto. See Code §§ 109A-9—102 (1), 109A-9—109.

In the case of Yarbrough v. Rogers, (Fla. App.) (300 S2d 286), the court remanded the case to the trial court with the direction to "take further testimony pertaining to the type of business carried on by Continental Coiffures Beauty Salon so that the court can then determine whether the transfer in question falls within the purview of Chapter 676, F. S."

*Judgment reversed. Marshall and McMurray, JJ., concur in the judgment only.*

ARGUED SEPTEMBER 8, 1976 — DECIDED JANUARY 5, 1977.

*William Jonathan Murray,* for appellant.
*Adams, O'Neal, Hemingway, Kaplan, Stone & Brown, W. W. Hemingway,* for appellees.