722 P.2d 647

**REPUBLIC STEEL CORPORATION, Plaintiff-Appellant,**

v.

**CANYON CULVERT COMPANY, INC., John Guilding, Individually, and Armco Inc., a foreign corporation, Defendants-Appellees.**

**No. 16272.**

Supreme Court of New Mexico.

July 25, 1986.

E. Douglas Latimer, Spann, Latimer & Hollowwa, Albuquerque, for plaintiff-appellant.

Paul S. Wainwright, Robinson, Stevens & Wainwright, Albuquerque, for Canyon Culvert Co.

Jay D. Hertz, Sutin, Thayer & Browne, Albuquerque, for Armco.

## OPINION

WALTERS, Justice.

Plaintiff Republic Steel is a creditor of defendant Canyon Culvert Co., a manufacturer of steel culverts, whose sole shareholders were defendant John Guilding and his wife. On August 29, 1984, defendant Armco, Inc. purchased virtually all of Canyon Culvert's manufacturing equipment. Between September 4 and October 15, 1984, Canyon Culvert transferred its remaining piece of equipment, its office furniture, and its inventory to Canyon Steel, a newly-formed corporation whose principal shareholder was John Guilding.

Having received written assurance from Canyon Culvert's lawyer that Canyon Culvert had complied with any pertinent provisions of the Bulk Transfer sections of the Uniform Commercial Code (UCC), Article VI, Armco did not provide Republic or any other creditor with a formal notice of sale. *See* NMSA 1978, §§ 55–6–104 to –106. Republic learned of the Armco transaction in late September of 1984 and, on March 15, 1985, brought suit on open account against Canyon Culvert and John Guilding and against Armco seeking a declaration that the transfer to Armco was ineffective against Republic's claims as a creditor.

Republic now appeals from summary judgment in favor of Armco, raising two issues:

(1) Whether the sale to Armco was a bulk transfer within the meaning of NMSA 1978, § 55–6–102(2);

(2) If so, whether Armco's failure to provide Republic with the requisite statutory bulk sales notice amounted to a "concealment" within the meaning of Section 55–6–110 so that the six-month statute of limitations did not begin to run until Republic actually learned of the transfer.

Both are issues of first impression in New Mexico. Because we hold that the sale to Armco was not a bulk transfer under UCC Article VI, we do not reach the second issue.

Article VI of New Mexico's UCC provides in part:

(1) A "bulk transfer" is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the * * * inventory * * * of an enterprise subject to this article.

(2) A transfer of a substantial part of the equipment * * * of such an enterprise is a bulk transfer if it is made *in connection with* a bulk transfer of inventory, but not otherwise.

(3) The enterprises subject to this article are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell.

NMSA 1978, § 55–6–102 (emphasis added). Where a sale embodies the statutory elements of a bulk transfer, the transferee is required to obtain a list of the seller's creditors and notify them of the impending sale no later than ten days before the transferee pays for or takes possession of the goods. *See* §§ 55–6–104, –105.

Republic argues that, because the purpose of Article VI is to protect creditors from debtors who might otherwise liquidate assets and abscond with the proceeds (*see* § 55–6–101, comments 3 and 4), the words "in connection with" as used in Section 55–6–102(2) must necessarily mean closely related in time to or part of the overall process of going out of business. Thus, claims Republic, the sale of equipment to Armco, made shortly before the sale of inventory to Canyon Steel, was a transfer of equipment "made in connection with a bulk transfer of inventory," *i.e.*, a bulk transfer subject to the notice requirements of Article VI.

The case law dealing with this issue is sparse. At least one commentator has questioned the wisdom of exempting bulk sales of equipment only from Article VI. *See* Levit, *Bulk Transfers—Stepchild of the Uniform Commercial Code,* 46 Notre Dame Law. 694, 695 (1971). Nonetheless, the majority of jurisdictions have held in the past that their pre-code Bulk Sales Acts were to be strictly construed because they were in derogation of the common-law rules which secure the right to alienate one's property without restriction. Annot., 47 A.L.R.3d 1114, 1124 (1973). For example, where a bulk sales statute applied only to a bulk transfer of "merchandise or merchandise and fixtures," the statute was held not applicable to a transfer of fixtures only, *Hobart Mfg. Co. v. Joyce & Mitchell,* 4 S.W.2d 185 (Tex.Civ.App.1928), or to a transfer of merchandise to one purchaser accompanied by a transfer of fixtures to a different purchaser on the same day. *Hughes-Curry Packing Co. v. Sprague,* 200 Ind. 540, 165 N.E. 318 (1929).

When the various bulk sales laws were codified into UCC, Article VI, the word "equipment" was substituted for "fixtures," [IC Secured Transactions] Uniform Commercial Code Service (MB) § 22.06[3] (1986), and those courts that have dealt with UCC Section 6–102(2) have construed that subsection narrowly. In *H.L.C. Imports Corp. v. M & L Siegel, Inc.,* 94 Misc.2d 179, 413 N.Y.S.2d 605 (N.Y.Civ.Ct. 1979), the sale of all office supplies, equipment, and furniture by a jeweler who subsequently "disappeared" was held not to be a bulk transfer because there had been no sale of inventory. Similarly, a Pennsylvania trial court found that where a private club sold all its personal property, equipment, and fixtures, excluding its liquor and other inventory, there was no bulk transfer subject to Article VI. *Brooks v. Lambert,* 44 Del.Co. 153, 10 Pa.D. & C.2d 237 (1957). The *Brooks* court did not specify when or to whom the defunct club had sold its inventory. It did, however, observe that under state law the bulk sale of the liquor was governed exclusively by liquor board regulations and could not therefore be sub-

ject to Article VI, and that the remaining inventory of that particular business would logically consist of goods unsaleable in bulk. *Id.* at ——, 10 Pa.D. & C.2d at 240–41.

Other courts, while holding that the defendant transferor was not the sort of *enterprise* subject to Article VI, have stated in dicta that even if the transferor had satisfied the elements of Section 6–102(3), its sale of equipment only was not a bulk transfer within the meaning of Section 102(2). *See ABM Escrow Closing and Consulting, Inc. v. Matanusksa Maid, Inc.,* 659 P.2d 1170, 1173 n. 11 (Alaska 1983); *All Nite Garage, Inc. v. A.A.A. Towing, Inc. of Reno,* 85 Nev. 193, 452 P.2d 902 (1969).

■ We agree with the cases that have construed Section 6–102(2) narrowly. Because Article VI restricts the free alienation of property (*see* § 55–6–101, comment 5) and imposes an unusual obligation on the *buyer* (§ 55–6–110, comment 1), the determination whether equipment is transferred "in connection with" a bulk transfer of inventory should logically be made from the *buyer's* point of view as of the date that negotiations are completed. If, at that time, the buyer has not purchased or agreed to purchase a major part of the seller's inventory (*see* § 55–6–102(1)), and has not been alerted to the likelihood of such a concurrent sale, the buyer has no reason to know or to believe that the transfer of the seller's equipment is being made "in connection with" a bulk transfer of inventory as described in Section 55–6–102(2).

■ In the instant case, Armco bargained for and negotiated a purchase of equipment only. That transaction, in and of itself, was not a bulk transfer within the literal meaning of Section 55–6–102(2). As an added precaution, however, Armco drafted a purchase agreement in which Canyon Culvert promised that its attorney would provide a letter verifying that Canyon Culvert had complied with any applicable provisions of Article VI. Armco was

justified in believing that the transaction was not a bulk transfer within the meaning of Section 55–6–102(2). Indeed, as of the date of the sale, Article VI could not have applied because there had been no transfer of Canyon Culvert's inventory to anyone. It would be illogical and unfair to hold that Canyon Culvert's subsequent sale of inventory to Canyon Steel operated retroactively to impose on Armco the requirements of Article VI simply because of Armco's status as a buyer, and regardless of its lack of knowledge of Canyon's plans or later conduct.

■ We therefore hold that, under Section 55–6–102(2), the sale of equipment occurs in connection with a bulk transfer of inventory and notice to creditors is required if and only if the purchaser of the equipment has reason to know that a substantial part of the seller's inventory has been or will be sold in a reasonably contemporaneous transaction.

The summary judgment in favor of Armco is affirmed.

SOSA, Senior Justice, and FEDERICI, J., concur.

STOWERS, Justice (specially concurring).

I concur in the result, however, I do not concur in the Opinion insofar as it states that a reasonably contemporaneous transaction is an element of NMSA 1978, Subsection 55–6–102(2) which simply states: "A transfer of a substantial part of the equipment (Section 9–109 [55–9–109 NMSA 1978]) of such an enterprise is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise."