## A91A1270. PROFESSIONAL MARKETING DISTRIBUTORS, INC. v. FELDMAN ASSOCIATES, INC.
### (414 SE2d 666)

CARLEY, Presiding Judge.

In its capacity as a judgment creditor of Lingard & Associates, Inc. (L&AI), appellee-plaintiff initiated the instant garnishment action against appellant-garnishee. After appellant had answered and denied its possession or control of any garnishable property, appellee filed a traverse, asserting that appellant had acquired L&AI's inventory and equipment in a "bulk transfer" which did not comply with the applicable provisions of OCGA § 11-6-101 et seq. See *Vincent Brass & Aluminum Co. v. Johnson*, 149 Ga. App. 537, 538 (2a) (254 SE2d 752) (1979), rev'd on other grounds, 244 Ga. 412 (260 SE2d 325)

(1979); *American Express Co. S. A. I. v. Bomar Shoe Co.*, 125 Ga. App. 408 (187 SE2d 922). After conducting a hearing, the trial court sustained the traverse and entered judgment in favor of appellee. Appellant's application for a discretionary appeal to this court was granted.

1. OCGA § 18-4-20 (c) provides, in relevant part, that "[a]ll property, money, or effects of the defendant in the possession or control of the garnishee . . . shall be subject to process of garnishment. . . ." L&AI's inventory and equipment had been purchased by appellant prior to the initiation of the instant garnishment proceeding, but there had been no compliance with the notice requirements of OCGA § 11-6-101 et seq. Accordingly, if that purchase was a "bulk transfer" subject to the provisions of OCGA § 11-6-101 et seq., it would be "ineffective against any creditor" of L&AI (OCGA §§ 11-6-104 (1); 11-6-105) and, even though appellant had resold the inventory and equipment, "the proceeds [of that resale] would be subject to garnishment [by appellee]." *American Express Co., S. A. I. v. Bomar Shoe Co.*, supra at 411. Accordingly, the first issue for resolution is whether appellant acquired L&AI's inventory and equipment in a "bulk transfer."

Appellant urges the inapplicability of OCGA § 11-6-101 et seq. to its purchase of L&AI's inventory and equipment, on the ground that L&AI was not an enterprise that was otherwise subject thereto. "The enterprises subject to [OCGA § 11-6-101 et seq.] are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell." OCGA § 11-6-102 (3). Thus, an enterprise whose principal business is the sale of services, rather than the sale of merchandise from stock, would not be included. See *Marlick Constr. Co. v. T. Lynn Davis Realty &c. Co.*, 140 Ga. App. 867 (232 SE2d 147) (1977). However, the evidence in the instant case would authorize a finding that L&AI's principal business was the sale of book pricing labels which it manufactured. Accordingly, the trial court did not err in finding that L&AI was otherwise subject to OCGA § 11-6-101 et seq.

Appellant further urges that its purchase of L&AI's inventory and equipment did not constitute a "bulk transfer" as defined in OCGA § 11-6-102 (1) and (2): "A 'bulk transfer' is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise, or other inventory ([cit.]) of an enterprise subject to this article. A transfer of a substantial part of the equipment ([cit.]) of such an enterprise is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise." There was evidence that, in the first of two transactions, appellant purchased *all* of L&AI's inventory *and a substantial part* of L&AI's equipment. Accordingly, the evidence clearly sup-

ports the trial court's finding that this transaction was a "bulk transfer" of L&AI's inventory within the meaning of OCGA § 11-6-102 (1). "While a transaction may be [a] 'bulk transfer' even if it is not a sale of all of a business's [inventory], certainly a transaction which *is* a sale of all of a business's [inventory] *must* be included with[in] the definition of a 'bulk transfer.' " (Emphasis in original.) *In Re Streamlight*, 108 B.R. 505, 510 (7) (Bkrtcy. E.D. Pa. 1989). Since there was a "bulk transfer" of all of L&AI's inventory, it follows that the transfer of a substantial part of L&AI's equipment that was made in connection therewith was likewise a "bulk transfer" within the meaning of OCGA § 11-6-102 (2).

A few days after the "bulk transfer" discussed above, a second transaction occurred in which appellant purchased some additional pieces of L&AI's equipment. As previously noted, a transaction involving an enterprise's equipment is not considered to be a "bulk transfer" unless it is "made in connection with a bulk transfer of [its] inventory. . . ." OCGA § 11-6-102 (2). Appellant urges that the trial court erred in finding that this subsequent purchase of only additional pieces of L&AI's equipment was a "bulk transfer" within the meaning of OCGA § 11-6-102 (2). "[T]he sale of equipment occurs in connection with a bulk transfer of inventory . . . if and only if the purchaser of the equipment has reason to know that a substantial part of the seller's inventory has been or will be sold in a reasonably contemporaneous transaction." *Republic Steel Corp. v. Canyon Culvert Co.*, 722 P2d 647, 650 (3) (N.M. 1986). Since appellant had *itself* acquired all of L&AI's inventory only a few days before, appellant quite clearly had "reason to know" of that "reasonably contemporaneous transaction." Accordingly, the evidence authorized the trial court to find that the subsequent purchase of only additional pieces of L&AI's equipment was itself a "bulk transfer" because it had been "made in connection with" the previous "bulk transfer" of all of L&AI's inventory.

The trial court did not err in finding that L&AI was generally subject to the provisions of OCGA § 11-6-101 et seq. and that the two purchases of L&AI's inventory and equipment by appellant were "bulk transfers" subject to the provisions of OCGA § 11-6-101 et seq. Since the two "bulk transfers" had not been effectuated in compliance with those applicable statutory provisions, they were ineffective as against appellee and appellee was authorized to garnish the proceeds realized by appellant upon its resale of L&AI's inventory and equipment. Accordingly, the trial court correctly sustained appellee's traverse of appellant's answer.

2. Prior to appellant's purchase of L&AI's inventory and equipment, a perfected security interest therein had been acquired by a local bank and, in addition, ad valorem taxes were owing thereon. Of

the agreed purchase price for L&AI's inventory and equipment, $63,863.67 was paid by appellant in full satisfaction of the perfected security interest and $2,100 was paid by appellant in full satisfaction of the unpaid taxes. When appellant resold the inventory and equipment, it was paid $73,900. The trial court found that the entire $73,900 represented garnishable proceeds realized by appellant from its resale of L&AI's inventory and equipment. Appellant enumerates this finding as error, urging that it was entitled to set off the $63,863.67 and the $2,100 that it had paid in satisfaction of the liens against L&AI's inventory and equipment.

The lien of the holder of the perfected security interest and the tax lien antedated and had priority over appellee's lien. The "bulk transfers" of L&AI's inventory and equipment were merely "ineffective" as against appellee. They did not serve to void L&AI's sale of its inventory and equipment to appellant or to give appellee priority over the pre-existing lienholders. Accordingly, the inventory and equipment purchased by appellant would *not* represent garnishable property insofar as the pre-existing liens had priority over appellee's lien and to the extent that appellant had satisfied those pre-existing liens. "[T]he garnishee has a right to set off against the price which he owes the defendant the amount necessary to clear the liens against the property sold, and such amount [is] not subject to the garnishment proceeding." *Gainesville Feed & Poultry Co. v. Waters*, 87 Ga. App. 354, 359 (2) (73 SE2d 771) (1952). Since the inventory and equipment would not represent garnishable property to the extent that appellant had satisfied the pre-existing liens, it necessarily follows that the proceeds realized by appellant upon the resale of L&AI's inventory and equipment would not represent garnishable funds to the extent that appellant had satisfied those pre-existing liens. Thus, the trial court erred in finding that $73,900 represented the amount of garnishable proceeds realized by appellant from its sale of L&AI's inventory and equipment. From that amount, the $63,863.67 and the $2,100 that appellant paid in satisfaction of the pre-existing liens must be set off. Accordingly, the judgment in favor of appellee is hereby reversed with direction that the trial court enter a new judgment which is not inconsistent with this opinion.

*Judgment reversed with direction. Judge Arnold Shulman concurs. Beasley, J., concurs in the judgment only.*

DECIDED DECEMBER 3, 1991 —
RECONSIDERATION DENIED DECEMBER 19, 1991 —

*Jones & Ledbetter, Howard W. Jones, Joseph D. Little*, for appellant.

*Hines, Carroll & Niedrach, John F. McClellan, Jr.*, for appellee.