PER CURIAM.
This is an appeal from a determination by the trial court that the transfer of a business violated the “bulk transfers” provisions of our Uniform Commercial Code, § 7-6-101 et seq., Ala.Code 1975.
On December 31, 1992, ADI Fabricators, Inc., purchased the property, plant, and equipment of Alabama Industrial Fabricators, Inc. (A.I.F.). A.I.F. was a contract shop that fabricated large components for heavy industrial machinery and purchased materials for specific jobs on an “as-needed” basis. When A.I.F. was sold, it was involved in a construction project with the Scottsboro Industrial Development Board (IDB). IDB had leased property to Akzo Industrial Fibers, Inc.; the lease agreement provided that IDB was to undertake construction on the property. A.I.F. was contracted by IDB to do some manufacturing for the project, which was financed by Wachovia Bank of North Carolina.
Before A.I.F. was sold, Harsco Corporation and Chatham Steel Corporation had sold steel materials on credit to A.I.F. for use in the construction project. Harsco and Chat-ham were not paid before the business was sold, nor were they given notice of the sale.
Harsco Corporation initiated this action by filing a complaint against Akzo, IDB, Wacho-via Bank, A.I.F., and ADI. The complaint alleged breach of contract for failure to tender payment for materials delivered and alleged that A.I.F. and ADI had violated the bulk transfers provisions and that the violation made ADI liable for AJ.F.’s accounts. Harsco also claimed that ADI had assumed several of AJ.F.’s contracts, making it liable for A-I.F.’s debts. Harsco asserted a lien on the property and land at IDB’s industrial site in Scottsboro, leased to Akzo, and as to which Wachovia Bank held a security interest. IDB and Akzo filed an interpleader action and paid into the trial court the $75,-000 it owed to ADI for materials provided to the Scottsboro project.
Chatham subsequently sued A.I.F. and Akzo, alleging breach of contract and asserting a mechanic’s or materialman’s lien on the industrial plant property. ADI then sued Akzo, IDB, and Wachovia Bank for the $75,-000 that had been paid in to the trial court. On August 11, 1993, the trial court consolidated the three cases.
IDB, Akzo, and Wachovia Bank jointly moved for a summary judgment, which was entered in their favor on March 9, 1994. A nonjury trial was held regarding the remaining actions in which ADI, Harsco, and Chat-ham made claims to the fund. The trial court entered a judgment in favor of Harsco and Chatham, and against ADI, for the $75,-000. ADI moved for a new trial, or to alter, amend, or vacate the judgment; the court denied this motion. ADI appealed to the Supreme Court, which deflected the ease to this court pursuant to § 12-2-7(6), Ala.Code 1975.
ADI contends that the trial court erred by failing to make an initial determination as to whether the bulk transfers provisions of the U.C.C. properly applied to the transaction between A.I.F and ADI. ADI argues that the provisions do not apply to contract manufacturers such as A.I.F.
This determination is governed by § 7-6-102(3), Ala.Code 1975, which provides: “The enterprises subject to this article are all those whose principal business is the sale of merchandise from stock, including those who *843 manufacture what they sell.” No Alabama ease law comprehensively explains the operation of the bulk transfers provisions or defines “those who manufacture what they sell.” We accept the interpretation rendered in Chromacolour Labs, Inc. v. Snider Bros. Property Management, Inc., 66 Md.App. 820, 503 A.2d 1365 (1986), interpreting this same provision, which Maryland, like Alabama, had adopted from U.C.C. Article 6. The' Maryland court held that, to determine whether the bulk transfers provisions apply, the court must decide: (1) whether the transferor was a service business exempt from the requirements of § 6-102(3); (2) if not, whether the exchange represented “a major part” of the materials, supplies, or inventory of the trans-feror, within the meaning of § 6-102(1); or (3) whether a substantial part of the transfer- or’s equipment was transferred in connection with a “bulk transfer” of inventory, within the meaning of § 6-102(2). Id. at 1368.
ADI contends that the trial court’s judgment is due to be reversed because the court did not expressly find that the bulk transfers provisions applied to A.I.F. before finding a violation of the provisions, and therefore failed to satisfy the first prong of the analysis set out in Chromacolour Labs.
ADI argues that AI.F. was primarily a provider of services, that its principal business was not the sale of merchandise from standard stock, and that it was, therefore, excluded from the application of the provisions. See Professional Mktg. Distrs., Inc. v. Feldman Associates, Inc., 202 Ga.App. 338, 414 S.E.2d 666, 667 (1991); and Allsbrook v. Azalea Radiator Serv., Inc., 227 Va. 600, 316 S.E.2d 743, 744 (1984). Official Comment 2 to § 7-6-102 explains:
“The businesses covered [as defined in subsection (3) ] ... do not include farming nor contracting nor professional services ... whose principal business is the sale not of merchandise but of services.”
Over the years, various courts have adopted diverse interpretations of which business entities are included. At one time, it was generally held that the statutes were not enacted to cover businesses in which a substantial amount of labor was necessarily sold in connection with an item in the stock-bin. See Decisions, 35 Va.L.Rev. 123 (1949). On the other hand, if the stock maintained serves a dual purpose, both as a source of repair parts for service and as inventory to be sold at retail, then the business should fall within the statute. See Yeager v. Powell, 219 Ark. 713, 244 S.W.2d 141 (1951).
Contracting cases, such as this case, have long caused some difficulty. In some cases, the contractor may provide only services, such as a typical building contractor. Alternatively, a specialty contractor, who provides material as well as services, may raise the same difficulties as the repair-parts cases such as Yeager, supra. In Axtell Co. v. Word, 29 S.W.2d 421 (Tex.Civ.App.1930), the Texas Court of Civil Appeals held that a plumbing contractor, who furnished the materials that were used in doing the work, did not fall within the statute, on the grounds that the sale of the materials was merely incidental to the chief business of selling labor and mechanical skill. In contracting cases, many courts have somewhat consistently held that the fact that services compose a large portion of what is actually sold is the controlling factor in determining that the business is not included. See, e.g., Tomforde v. Mitchell Constr. Co., 91 S.W.2d 1137 (Tex.Civ.App.1936). Thus, it has been generally held that contract manufacturers are not covered by Article 6. First Security Bank of Utah v. Zions First Nat'l. Bank, N.A., 537 P.2d 1024 (Utah 1975).
Furthermore, the principal focus of the statutory language is on whether the manufacturer offers its manufactured goods for sale from standard inventory. In Professional Marketing Distr., Inc. v. Feldman Assoc., Inc., 202 Ga.App. 338, 414 S.E.2d 666 (1991), the Georgia Court of Appeals held that Article 6 was applicable to a manufacturer whose principal business was the sale of book pricing labels from stock that it manufactured. However, the case at bar is strikingly similar to Allsbrook v. Azalea Radiator Serv., Inc., 227 Va. 600, 316 S.E.2d 743, 744 (1984). In Allsbrook, the court noted that the transferor radiator repair business kept minor parts such as hoses and clamps on hand, and purchased major parts such as radiator cores on an “as needed” *844 basis. The Allsbrook court held that the business was not covered by Article 6’s bulk transfers provision because the service of radiator repair was the principal business. Id. at 744. Another similar case is Sta-Rite Indust., Inc. v. Taylor, 16 Ariz.App. 230, 492 P.2d 726 (1972), in which a business that drilled and placed casing wells and pumps on a contractual basis was held not to fall within Article 6 even though some wellhead casings were transferred in the sale of the business.
Additionally, many states hold that, because the U.C.C. bulk transfers provisions are in derogation of the common law rule of free alienability of property, they must be strictly construed. See, e.g., Republic Steel Corp. v. Canyon Culvert Co., 104 N.M. 396, 722 P.2d 647 (1986). A fundamental principle of statutory interpretation in Alabama is that a statute in derogation or modification of the common law is to be strictly construed. See Arnold v. State, 363 So.2d 524 (Ala.1977); and Pappas v. City of Eufaula, 282 Ala. 242, 210 So.2d 802 (1968).
Therefore, we are not convinced that Alabama’s bulk transfers provisions, Ala. Code 1975, § 7-6-101 et seq., are sufficiently broad to include transfers in the type of business operated by A.I.F. and ADI. It is without dispute that both entities are in the business of fabricating industrial components on a contractual basis for industrial customers such as IDB and Akzo. Furthermore, A.I.F., as a contract fabrication business, maintained no inventory of finished goods for sale to customers. Its practice was to purchase materials only as needed to fabricate components after receiving customer orders. The closing memorandum relating to the sale of the business to ADI listed “inventory” as part of the property exchanged in the sale. Mr. Paul Adamson, the person who sold the business to ADI, stated in deposition that this inventory consisted of steel materials, paint, and welding rods to be used in fabricating jobs. The fact that these items were included in the list of property exchanged suggests that some inventory remained on hand at times, but is not enough to place the transfer within the ambit of Article 6, because the primary function of A.I.F. was manufacturing—a service—and because those items of inventory did not constitute a standard stock that would be sold to customers. The record reveals that A.I.F. was actually a contractor that produced goods to order and that did not routinely sell from stock. Therefore, the transfer does not fall within the scope of Article 6, and the judgment of the trial court is due to be reversed.
Additionally, we note that even if the transfer were within the scope of Article 6, the remedy of the trial court is not available under Alabama’s bulk transfers provisions. If ADI were found to be a transferee pursuant to § 7-6-104, then the transfer would be “ineffective against any creditor of the trans-feror.” The extent to which a transferee may be personally liable has been previously addressed by this court in another case, wherein this question was raised, and Judge Holmes stated:
“As noted above, defendant argues that such noncompliance with the Bulk Sales Act renders the transfer ineffective and enables the defendant to rightfully apply the plaintiff’s money on deposit to satisfy SSS’s debt. We cannot agree.
“The court in Darby v. Ewings Home Furnishings, 5 UCC Rep. 198, 278 F.Supp. 917 (DCWD Okl.1967), held that § 6-106 of the U.C.C. renders a transferee personally liable to creditors of the transferor for the value of the property purchased or the amount paid if there is a failure to comply with the bulk transfer provisions.
“However, § 6-106 was not adopted by Alabama and thus has no applicability in the present case.”
Get It Kwik of America, Inc. v. First Alabama Bank of Huntsville, N.A., 361 So.2d 568, 571 (Ala.Civ.App.1978).
Later, in Bill Voorhees Co. v. R & S Camper Sales of Birmingham, Inc., 605 F.2d 888 (5th Cir.1979), the United States Court of Appeals for the Fifth Circuit was asked to decide transferee liability in accordance with Alabama’s bulk transfers provisions. That court noted that Article 6 does not detail remedies for its breach, but merely provides:
“A noneomplying transfer is ‘ineffective.’ Ala.Code 1975, §§ 6-104, -105. The Official Comments only mention actions
*845 against the property as possible remedies: levy or appointment of a receiver to take the goods under local procedures. U.C.C. § 6-104, comment 2; § 6-111, comment 2. Actions against the transferee personally are conspicuous by their absence.”
Voorhees, 606 F.2d at 890-91.
After reviewing the rationale of the decisions in eases wherein § 6-106 had been adopted, the court concluded:
“In light of the lack of mention of actions against transferees in the statute, the repeal of pre-existing remedial legislation, the Alabama legislature’s failure to adopt section § 6-106, and the statements of the Alabama court in Get It Kwik, we agree with the trial [court] ... and conclude that under Alabama law transferees are not personally liable for the value of disposed bulk property to a creditor who does not receive notice of the bulk sale.”
Voorhees, 605 F.2d at 893.
Accordingly, even if the instant transaction were a bulk transfer, the creditors would have no right to the proceeds of the contract between ADI and Akzo/IDB, and the creditors would be limited to actions against the property remaining in the hands of the transferee.
Because we hold that the bulk transfers provisions of the U.C.C. do not apply to the transaction, we need not address the other issues raised by ADI.
The judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED ADD REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, YATES, MONROE and CRAWLEY, JJ, concur.