689 So.2d 845 (1997)
Ex parte HARSCO CORPORATION.
(Re ADI FABRICATORS, INC. v. HARSCO CORPORATION and Chatham Steel Corporation).
Ex parte CHATHAM STEEL CORPORATION.
(Re ADI FABRICATORS, INC. v. HARSCO CORPORATION and Chatham Steel Corporation).
1950791, 1950792.
Supreme Court of Alabama.
January 10, 1997.
*846 Meade Whitaker, Jr., and J. Clinton Pittman of Sadler, Sullivan, Sharp, Fishburne & Van Tassel, P.C., Birmingham, for Harsco Corp.
Jonathan E. Lyerly, Birmingham, for Chatham Steel Corp.
Jack R. Thompson, Jr., and Ronald C. Wall, Jr., of Kracke, Thompson & Ellis, Birmingham, for respondent.
PER CURIAM.
We granted Harsco Corporation and Chatham Steel Corporation's petitions for writs of certiorari to the Court of Civil Appeals, in order to determine whether that court erred in reversing the circuit court's nonjury ruling in favor of those parties in their actions against ADI Fabricators, Inc. ("ADI").

I.
Both Harsco and Chatham ("the plaintiffs") are manufacturers and suppliers of steel. They both sold steel materials to American Industrial Fabricators ("A.I.F.") on credit. A.I.F. purchased the steel to fabricate items according to the plans and specifications for a large industrial building being constructed by the Stone & Webster Engineering Corporation. Stone & Webster was the prime contractor on a construction project undertaken by the Industrial Development Board of Scottsboro, Alabama ("the Development Board"), on behalf of Akzo Industrial Fibers, Inc. Wachovia Bank of North Carolina provided financing and held a security interest on the project.
On December 30, 1992, some time after A.I.F. had received the steel from the plaintiffs, *847 ADI purchased A.I.F. for $677,685. The sale to ADI involved all of A.I.F.'s assets, including all of its real estate, furniture, equipment, machinery, inventory, and contract rights. The closing memorandum for the sale assigned $44,000 of the purchase price to "contract rights and miscellaneous furniture, equipment, inventory and personal property." However, the trial court found that the value of the inventory transferred was approximately $39,000. A.I.F. was dissolved as a corporation after its sale to ADI, and ADI took over the contract with Stone & Webster.
Harsco and Chatham were not paid for the steel they had delivered to A.I.F. before A.I.F.'s sale to ADI, nor were they notified of the sale prior to its consummation. Moreover, ADI was not notified by A.I.F. of A.I.F.'s debt owed to Harsco and Chatham. Once Harsco determined it would not be paid by A.I.F., it filed a complaint against A.I.F., ADI, the Development Board, Akzo, and Wachovia. The complaint alleged that A.I.F. had breached its contract with Harsco, that A.I.F. had violated Alabama's Bulk Transfers Act, Ala.Code 1975, § 7-6-101 et seq.,[1] and that ADI was liable for A.I.F.'s debt. Harsco also filed a lien on the Akzo construction site at the Development Board property.
In response, the Development Board and Akzo filed an interpleader action and paid $75,000 into the trial court. That sum represented the amount the Development Board owed to ADI for materials ADI had provided to the construction project. Thereafter, Chatham sued A.I.F. and Akzo and asserted a lien on the construction site. ADI then sued the Development Board, Akzo, and Wachovia, seeking to recover the $75,000 held in the interpleader action. The trial court consolidated the three cases on June 30, 1993.
The trial court entered summary judgments in favor of the Development Board, Akzo, and Wachovia, then held a bench trial regarding Harsco, Chatham, and ADI's claims for the interpleaded funds, on November 30, 1994. On January 25, 1995, the trial court ruled:
"Under the evidence before this court, there was clearly a violation of the Bulk [Transfers] Act, and [ADI] is clearly liable for these debts. The court recognizes that the inventory element of a sale of a business could be so minuscule as to cause it not to be a material part of the transaction, but it cannot [be said] that $39,000 out of an approximately $700,000 transaction is so insignificant that the Bulk [Transfers] Act would not apply to the transaction. The Bulk [Transfers] Act can be a very harsh doctrine in some instances, but it has been in the Alabama Code, in its present form, for 30 years.
". . . .
"IT IS HEREBY ORDERED, ADJUDGED AND DECREED by the court that Harsco Corporation and Chatham Steel Corporation shall have their claim paid out of the funds on deposit, including any accumulated interest...."
The trial court later ruled that Harsco should receive 34% of the interpleaded fund and that Chatham should receive 66% of the fund. Because the trial court had found ADI liable under the Bulk Transfers Act, the court did not make a judgment as to Harsco's allegation regarding ADI's possible liability based on assumption of A.I.F.'s contract with Stone & Webster.
ADI appealed the trial court's judgment, and the Court of Civil Appeals reversed, holding that A.I.F. was not a business enterprise subject to the Bulk Transfers Act. ADI Fabricators, Inc. v. Harsco Corp., 689 So.2d 841 (Ala.Civ.App.1995). The Court of Civil Appeals court concluded:
"[W]e are not convinced that Alabama's bulk transfers provisions, Ala.Code 1975, § 7-6-101 et seq., are sufficiently broad to include transfers in the type of business operated by A.I.F. and ADI. It is without dispute that both entities are in the business of fabricating industrial components *848 on a contractual basis for industrial customers such as IDB and Akzo. Furthermore, A.I.F., as a contract fabrication business, maintained no inventory of finished goods for sale to customers. Its practice was to purchase materials only as needed to fabricate components after receiving customer orders.... The record reveals that A.I.F. was actually a contractor that produced goods to order and that did not routinely sell from stock. Therefore, the transfer does not fall within the scope of Article 6, and the judgment of the trial court is due to be reversed."
689 So.2d at 844.

II.
We must determine whether the Court of Civil Appeals erred in reversing the trial court's holding that the sale of A.I.F. to ADI came within the scope of the Bulk Transfers Act. The trial court's holding that the sale was within the scope of the Act was based on a nonjury trial. Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court's findings of fact based on that evidence; those findings will not be disturbed except for a plain and palpable abuse of discretion. Faulkner v. Walters, 661 So.2d 227 (Ala.1995); Marvin's, Inc. v. Robertson, 608 So.2d 391 (Ala.1992). Further, a trial court's judgment based on findings that are based on ore tenus evidence will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Hope Developers, Inc. v. Vandiver, 665 So.2d 910 (Ala.1995); Jasper City Council v. Woods, 647 So.2d 723 (Ala.1994). However, when the trial court improperly applies the law to the facts, no presumption of correctness will exist as to the court's judgment. Beavers v. County of Walker, 645 So.2d 1365 (Ala.1994); Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994).

A.
The sections of the Bulk Transfers Act[2] most relevant to this case are Ala.Code 1975, §§ 7-6-102, -104, and 105. Section 7-6-102 states, in part:
"(1) A `bulk transfer' is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory (Section 1-9-109) of an enterprise subject to this article.

"(2) A transfer of a substantial part of the equipment (Section 7-9-109) of such an enterprise is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise.
"(3) The enterprises subject to this article are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell."
Section 7-6-104 states, in part:
"(1) Except as provided with respect to auction sales (Section 7-6-108), a bulk transfer subject to this article is ineffective against any creditor of the bulk transferor unless:

"(a) The transferee requires the transferor to furnish a list of his existing creditors prepared as stated in this section; and
"(b) The parties prepare a schedule of the property transferred sufficient to identify it; and
"(c) The transferee preserves the list and schedule for six months next following the transfer and permits inspection of either or both and copying therefrom at all reasonable hours by any creditor of the transferor, or files the list and schedule in the office of the secretary of state."
(Emphasis added.)
Section 7-6-104 works in combination with § 7-6-105, which states:
"In addition to the requirements of Section 7-6-104, any bulk transfer subject to this article except one made by auction sale (Section 7-6-108) is ineffective against any creditor unless at least 10 days before he takes possession of the goods or pays for them, whichever happens first, the *849 transferee gives notice of the transfer in the manner and to the persons hereafter provided (Section 7-6-107)."
Accordingly, if a business enterprise subject to the Act fails to fulfill its notice requirements, the bulk transfer of inventory is "ineffective" against any creditor of the transferor. Get it Kwik of America, Inc. v. First Alabama Bank, 361 So.2d 568 (Ala.Civ. App.1978).

B.
It is uncontested that the notice requirements of the Bulk Transfers Act were not met in this case. However, we must first determine whether A.I.F. was a business enterprise subject to the Bulk Transfers Act, under § 7-6-102(3). In other words, was A.I.F. an enterprise whose "principal business is the sale of merchandise from stock"?
This Court has never before addressed the specific issue of whether a particular business falls within the scope of § 7-6-102(3). Some guidance to the meaning of § 7-6-102(3) can be gained from Comment 2 to § 7-6-102, which states that subsection (3) does not include "farming nor contracting nor professional services, nor such things as cleaning shops, barber shops, pool halls, hotels, restaurants, and the like whose principal business is the sale not of merchandise but of services."
Section 7-6-102(3) is an adoption of Uniform Commercial Code § 6-102(3). U.C.C. commentators have noted that the question whether a business comes within the scope of the bulk transfers article depends on what can be termed the "primary element" test. In other words, does the business primarily render services, even if its doing so requires some inventory or supply of goods, or is it primarily in the business of selling goods from stock? See Ronald A. Anderson, Anderson on the Uniform Commercial Code, Vol. 7A, § 6-102:42:45 (1995 revision); James J. White and Robert S. Summers, Uniform Commercial Code, § 27-2a. (4th ed.1995).
Utilizing this type of test, other jurisdictions have found the following types of businesses to be providers of services rather than sellers of goods and thus not subject to the bulk transfers article: an airline (Mix v. Gem Investors, Inc., 103 Idaho 355, 647 P.2d 811 (Idaho App.1982)); a janitorial business (Sumner v. Janicare, Inc., 294 S.C. 483, 366 S.E.2d 20 (S.C.Ct.App.1988)); a custom printing business (H.P.S. Inc. of Florida v. Willis, 483 So.2d 767 (Fla.Ct.App.1986)); a radiator repair business (Allsbrook v. Azalea Radiator Service, Inc., 227 Va. 600, 316 S.E.2d 743 (1984)); a vehicle towing business (All Nite Garage, Inc. v. A.A.A. Towing, Inc., 85 Nev. 193, 452 P.2d 902 (1969)); and a small loan company (Credithrift Financial Corp. v. Guggenheim, 232 So.2d 400 (Fla. App.1970)). However, in many instances courts have found it quite difficult to determine by judicial notice the exact nature of a business and have found it to be a question of fact as to whether a business was primarily selling goods or was primarily providing services. See Yarbrough v. Rogers, 300 So.2d 286 (Fla.App.1974) (beauty salon); Marlick Constr. Co. v. T. Lynn Davis Realty & Auction Co., 140 Ga.App. 867, 232 S.E.2d 147 (1977) (business assembling and selling premanufactured housing unit packages); Chromacolour Labs, Inc. v. Snider Bros. Property Mgmt., Inc., 66 Md.App. 320, 503 A.2d 1365 (1986) (film processing business). This case is similar.
ADI argues that A.I.F. was not a provider of goods because, it says, A.I.F. did not maintain a set inventory of goods that it sold, but only purchased materials and supplies, such as the steel it purchased from Harsco and Chatham, on an as-needed basis to fabricate steel for each of its customers. However, § 7-6-102(3) does not require that a business maintain a large inventory of goods or sell goods from an inventory in order to be subject to the Bulk Transfers Act. Section 7-6-102(3) requires only that the business sell goods from stock, which includes self-manufactured goods. ADI contends that A.I.F. was primarily a provider of services. However, the record and briefs are fairly vague as to the exact nature of A.I.F.'s business.
Paul Adamson, Jr., a former shareholder and corporate representative of A.I.F., testified that A.I.F. was "an industrial steel fabricator." *850 However, the record indicates that Adamson had some difficulty testifying as to the nature of A.I.F.'s business operations.[3] ADI's brief describes A.I.F. as "as a contract shop which fabricated large components for industrial machinery." These general statements provide little indication of whether A.I.F. was primarily a provider of services, or was primarily a provider of goods from stock it had manufactured.
However, the trial court determined, based on an ore tenus hearing, that A.I.F. was subject to the Bulk Transfers Act. Implicit in that court's holding is a finding of fact that A.I.F. was primarily a provider of goods rather than services. That finding, based on ore tenus evidence, cannot be disturbed on appeal unless it is shown to be a plain and palpable abuse of discretion. Faulkner, supra. ADI offered no evidence of the exact nature of A.I.F.'s business; therefore, we cannot conclude that the trial court abused its discretion. Accordingly, the Court of Civil Appeals erred by reversing the judgment of the trial court and ruling that A.I.F. was a provider of services. We conclude that the trial court properly ruled that A.I.F. was a provider of goods subject to the requirements of the Bulk Transfers Act.

C.
The next issue we must consider is whether A.I.F.'s transfer of its inventory to ADI was a "bulk transfer." The trial court held that A.I.F. was subject to, and had violated, the notice requirements of the Bulk Transfers Act. Implicit in that holding is a finding that the transfer of inventory was a bulk transfer. That finding is due a presumption of correctness. Faulkner, supra.
As noted previously, § 7-6-102(1) defines a "bulk transfer" as "any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory (Section 7-9-109) of an enterprise subject to this article." First, it is uncontested that A.I.F. transferred all of its inventory to ADI; clearly, that was a transfer of a "major part" of A.I.F's inventory. Although Paul Adamson of A.I.F. testified that the inventory A.I.F. transferred to ADI consisted simply of steel, paint, welding rods, and nuts and bolts rather than finished goods, § 7-6-102(1) includes materials and supplies as inventory. Moreover, under § 7-6-102(2), the transfer of a substantial part of a business's equipment is also a bulk transfer if it is made in connection with a transfer of inventory. Such a transfer of equipment was made in this case. Thus, we conclude that the trial court correctly found that the transfer of inventory from A.I.F. to ADI was a bulk transfer.

D.
As noted previously, it is uncontested that the notice requirements of the Bulk Transfers *851 Act were not fulfilled; thus, the Act was violated. We must now determine what remedy is available to Harsco and Chatham. The Development Board and Akzo's interpleader action was consolidated with Harsco and Chatham's actions seeking damages from ADI. The trial court held that Harsco and Chatham should have their claims paid from the interpleaded fund. In reversing, the Court of Civil Appeals stated:
"Additionally, we note that even if the transfer were within the scope of Article 6, the remedy of the trial court is not available under Alabama's bulk transfers provisions. If ADI were found to be a transferee pursuant to § 7-6-104, the transfer would be `ineffective against any creditor of the transferor.' ...
". . . .
"Accordingly, even if the instant transaction were a bulk transfer, the creditors would have no right to the proceeds of the contract between ADI and Akzo/IDB, and the creditors would be limited to actions against the property remaining in the hands of the transferee."
689 So.2d at 844.
In reaching that conclusion, the Court of Civil Appeals relied upon its earlier opinion in Get It Kwik of America, Inc. v. First Alabama Bank of Huntsville, N.A., 361 So.2d 568 (Ala.Civ.App.1978), and the opinion of the Fifth Circuit Court of Appeals in Bill Voorhees Co. v. R & S Camper Sales of Birmingham, Inc., 605 F.2d 888 (5th Cir. 1979). In Get It Kwik, the Court of Civil Appeals noted that U.C.C. § 6-106, which can make a transferee of inventory personally liable for certain debts of the transferor, was not incorporated into Alabama's Bulk Transfers Act. In Bill Voorhees Co., the federal appeals court, making an Erie[4] guess, ruled that this Court would hold that the transferee of inventory was not personally liable to a creditor of the transferor because the legislature had not adopted U.C.C. § 6-106. The federal court noted that "[a]ctions against the transferee personally are conspicuous by their absence." 605 F.2d at 890-91.
The Bulk Transfers Act does not specifically spell out the remedies available to creditors if the Act's notice provisions are not followed; nor does it say that any specific remedy is exclusive. It states only that the transfer of the inventory is "ineffective" against any creditor of the transferor. Sections 7-6-104 and -105. Apparently, the creditors are left to whatever form of relief is available by the common law against the inventory that was transferred in violation of the Act. However, an in rem action against the inventory is a viable remedy only if the items composing the transferred inventory are still in the ownership of the transferee and are clearly identifiable among the transferee's possessions. An action in rem against the inventory would provide no relief to a transferor's creditors for violation of the Bulk Transfers Act if the inventory has been disposed of by the transferee to another party or has been so commingled with other property of the transferee that it can no longer be identified.
Although the Court of Civil Appeals held in Get It Kwik, supra, that a transferee of inventory had no personal liability to a creditor of the transferor, we believe the better-reasoned rule is that a transferee is not personally liable to the transferor's creditors unless the transferred inventory has been disposed of or so commingled that it has been placed beyond the reach of the creditors in an in rem action. This rule has been adopted by the courts of New York and Texas, states where, like Alabama, U.C.C. § 106 was not adopted. Cleaners Products Supply, Inc. v. Garcia, 165 Misc.2d 365, 629 N.Y.S.2d 647 (1995); In Matter of Curtina International, Inc., 23 B.R. 969 (Bankr. S.D.N.Y.1982); Anderson & Clayton Co. v. Earnest, 610 S.W.2d 846 (Tx.Civ.App.1980). To hold otherwise might encourage transferees, once they learn the transferor has unpaid creditors, to take such actions necessary as would prevent the creditors from reaching the inventory in an in rem action. This Court cannot condone such action. Accordingly, we overrule Get it Kwik, to the extent that that opinion holds that a where a violation of the notice provisions of the Bulk *852 Transfers Act has occurred, the transferee cannot be personally liable to the transferor's creditors under any circumstances.
The possibility of this Court's recognizing personal liability of a bulk transferee to the transferor's creditors is not unprecedented. In McKesson Robbins v. Bruno's Inc., 368 So.2d 1 (Ala.1979), this Court reversed a trial court's dismissal of an action by a bulk transferor's creditor alleging personal liability against a transferee, for failure to state a claim on which relief could be granted. Although the reversal of the dismissal was based on a question of law relative to pleading and not liability, so that the reversal by this Court was not an express recognition of transferee personal liability, this Court had an opportunity at that time to expressly renounce such a claim and failed to do so.
Of course, because the creditor's basis for recovery from the transferee is the transferred inventory, the transferee's personal liability is limited to the value of the inventory that was transferred. Curtina Int'l, supra; Anderson & Clayton Co., supra. Thus, ADI's personal liability is limited to the value of the inventory transferred to it by A.I.F. The record discloses that that inventory had a value of $39,000. Accordingly, the trial court erred in ruling that Harsco and Chatham were to have their claims paid from the entire amount of the $75,000 that the Development Board and Akzo had interpleaded. Instead, Harsco and Chatham's total recovery is limited to $39,000, the value of the transferred inventory, and they should receive payment in the proportion determined by the trial court. The remainder of the fund must be released to ADI.

III.
The judgment of the Court of Civil Appeals reversing the trial court's judgment must be reversed and this cause remanded with instructions for the Court of Civil Appeals to remand it to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ALMON, SHORES, HOUSTON, and KENNEDY, JJ., concur.
HOOPER, C.J., and COOK, J., concur in the result.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
I respectfully dissent. I agree with the Court of Civil Appeals' opinion, because I do not believe the Bulk Transfers Article applies to transfers of the type involved in this case.
NOTES
[1] In 1965, the Alabama legislature adopted most, but not all, of Article 6 of the Uniform Commercial Code. The Bulk Transfers Article of Title 7 of the Code of Alabama 1975, was enacted by the legislature in response to the problem of merchants selling their inventory, pocketing the proceeds, and leaving their creditors unpaid. Official Comments to Ala.Code 1975, § 7-6-101.
[2] By Act No. 96-523, 1996 Ala. Acts, the Alabama legislature repealed the Bulk Transfers Article, Ala.Code 1975, § 7-6-101 et seq., effective May 17, 1996.
[3] Mr. Adamson testified as follows:

"Q. All I'm trying to ask you is this: You get an order for a job. At that point you go out and order the materials?
"A. I don't go out and do anything.
"Q. Well, your company did, went out and ordered the materials at that point to do the job. Is that the way your company worked?
"A. No.
"Q. It didn't work that way?
"A. No.
"Q. Tell me how it worked.
"A. We had to not just get an order, but we had to have drawings and particularly with Stone & Webster they had to be approved. They absolutely had to.
"Q. At that point did your company then go out and order the materials necessary to complete the order?
"A. Yes. I assume so. I don't know.
"Q. Is it your testimony that you don't know how your business operated?
"A. Yeah, I know how it operated. You do.
"Q. Is that basically what I described to you correct that you got youryou got an order. You got drawings. You got whatever
"A. It's
"[Adamson's counsel]: Let him finish his question and answer his question.
"Q. You get your order. You get your specifications. You get your drawings. Once all that is approved, then you go out and get the material to complete that order?
"A. I don't know.
"Q. You don't know?
"A. Yeah, I know.
"Q. Do you know or don't you know?
"A. I know.
"Q. Well, then tell me how you operated.
"A. It was a long, involved process from negotiation of the contract to ultimate delivery of the steel, and some of the things you mentioned were in that process."
[4] Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).