A98A0912, A98A0913. WOLFF et al. v. PROTEGE SYSTEMS, INC.;
and vice versa.
(506 SE2d 429)

SMITH, Judge.

Protege Systems, Inc., brought suit against Todd Wolff and his present employer, DP Solutions, Inc., alleging violations of covenants against competition and disclosure of confidential information in an employment contract Wolff executed while employed at Protege. Protege sought injunctive relief and damages. The trial court did not rule on damages, but entered an order finding that Georgia law applies in construing the contract and granting in part and denying in part Protege's requests for injunctive relief. All parties appeal.

In the main case, Wolff and DP appeal from the trial court's grant of injunctive relief; in the cross-appeal, Protege appeals from other rulings and omissions in the trial court's order.[1] We find that the trial court correctly ruled that Georgia law applies, but we conclude that the restrictive covenants are overbroad and unenforceable and reverse those portions of the trial court's order granting injunctive relief. Because the covenants are unenforceable, we affirm both the trial court's refusal to enforce those provisions in favor of Protege and its refusal to award Protege attorney fees.

The record shows that both Protege and DP are part of a small niche industry providing consulting and support services to business customers using computer software developed and sold by Synon, Inc.[2] Wolff was an employee of Synon, providing consulting services, in 1995 and 1996. Protege, an Illinois corporation authorized to do business in Georgia, hired Wolff away from Synon, and notwith-

---

[1] Although the Supreme Court has jurisdiction of equity cases, when injunctive relief is granted or denied based upon the construction of a noncompete agreement, the case is not an equity *case,* and it is within this Court's appellate jurisdiction. *Pittman v. Harbin Clinic Professional Assn.,* 263 Ga. 66 (428 SE2d 328) (1993). Cases appealing the grant or denial of injunctive *relief* are directly appealable pursuant to OCGA § 5-6-34 (a) (4). *Saxton v. Coastal Dialysis &c.,* 267 Ga. 177 (476 SE2d 587) (1996). This case is therefore properly before us.

[2] Synon, Inc., itself also provides such services.

standing an employment contract with Synon containing a one year noncompete clause, instructed him to begin offering services for Protege in a substantially similar geographical territory. Wolff left the employ of Protege in February 1997 and began working for DP Solutions.

The employment agreement Wolff executed with Protege includes several clauses relevant to this action. In its order, the trial court did not detail its analysis of the various clauses or specify which clauses, if any, it found unenforceable. Because Wolff contends the trial court erred in enforcing any of these restrictions, we must examine them all.

1. Wolff contends the trial court erred in enjoining him from actively soliciting business from Protege's customers. Soliciting business from Protege's customers is covered in Paragraphs 3 and 4 of the employment agreement.

(a) Paragraph 3 of the agreement is captioned "noncompetition," and it provides that for a period of one year from the date of termination, Wolff may not "directly or indirectly, own, manage, operate, join, control, undertake planning for or organization of any business activity competitive with the business of Protege, or combine or conspire with other employees of Protege for the purpose of organizing any such competitive business activity, or be employed in any manner with any business of the type and character of business engaged in by Protege at the time of such termination."

Because covenants against competition in employment agreements are in partial restraint of trade, they are upheld only when strictly limited, both in time and geographical effect, and when the restrictions are otherwise reasonable, considering the business interests of the employer needing protection and the effect of the restrictions on the employee. *Nat. Settlement Assoc. v. Creel*, 256 Ga. 329, 331 (3) (349 SE2d 177) (1986). We agree with Wolff that this covenant is unenforceable because it purports to prevent Wolff from obtaining employment with any competitor in any capacity. Such a restriction has repeatedly been held to be overbroad, unreasonable, and prohibited by the Georgia Constitution. *Creel*, supra at 332 (3) (c); *McNease v. Nat. Motor Club*, 238 Ga. 53, 56 (231 SE2d 58) (1976).

Such broad restrictions on any activity with any competitor are overbroad when not limited to the employee's geographical territory. *W.R. Grace & Co. v. Mouyal*, 262 Ga. 464, 466-467 (422 SE2d 529) (1992). In this case, although paragraph 3 includes a geographic limitation, its wording renders it essentially meaningless as any geographical restriction. Paragraph 3 provides that the agreement "shall be bound by the following geographical territory; Clayton, Cobb, Dekalb and Fulton Counties located in the state of Georgia." But it also provides that the covenants "shall not restrict or prohibit the

employee from engaging in providing computer related software applications *not* used, offered, and/or developed by Protege, so long as the customer and the employee's place of business are located entirely outside the area." (Emphasis supplied.) The use of the word "not" ensures that even *outside* the restricted territory, the employee may engage in no business activity with any customer that involves software *"used"* by Protege, which is the Synon software.[3]

Because the competition restrictions in Paragraph 3 of the agreement are unreasonable and overbroad, they may not be enforced. The trial court therefore erred in enjoining Wolff from soliciting business from Protege's customers pursuant to Paragraph 3 of the agreement.

(b) Paragraph 4 of the agreement is captioned "nonsolicitation of customers." It provides, in pertinent part, as follows: "During the term of this agreement, and for a period of one year immediately following the termination of his/her employment with Protege, the employee shall not . . . call on, solicit, or take away, or attempt to call, solicit, or attempt to take away any of the customers of Protege [on whom the employee called or with whom he/she became acquainted while employed at Protege], either for himself or for any other person, firm or corporation." The record shows that Protege has only 15 customers and that it sought to prevent Wolff from doing business with any of them, although it is undisputed that Wolff had a business relationship with only eight of these customers.

Had this covenant been restricted to customers Wolff "called on" while at Protege, it might have been reasonable. But the covenant does not define or list those customers with whom Wolff "became acquainted" while at Protege. As written, the paragraph purports to prohibit Wolff from "calling on" any of Protege's customers, regardless of whether he had a business relationship with those customers while employed at Protege, so long as he "became acquainted with" them while at Protege. This is overbroad.

"[A] restrictive covenant prohibiting a former employee from rendering services to *any* client of the employer must contain a territorial restriction expressed in geographic terms because that restriction, which does not take into account whether the employee had a business relationship with that client or whether it was the client who solicited the former employee, is otherwise unreasonable and overbroad in its attempt to protect the employer's legitimate interest in keeping the employee from taking advantage of the goodwill generated during his employment with the employer to lure employer

---

[3] Paragraph 3 is overbroad in other respects as well. It is undisputed that Protege uses Synon software, which is also licensed to DP. But this paragraph purports to prohibit Wolff from providing software applications *used* by Protege, without limiting the restriction to software as to which Protege has an exclusive license or claim of ownership.

customers away." *Mouyal,* supra at 467, n. 3. Accord *American Software USA v. Moore,* 264 Ga. 480, 481 (448 SE2d 206) (1994). Paragraph 4 does not include a territorial restriction, and it is overbroad and unenforceable. The trial court erred in enjoining Wolff from soliciting Protege's customers pursuant to this provision.

(c) Paragraph 4 of the employment agreement also prohibits Wolff from disclosing "to any person, firm, or corporation the names or addresses of any of the customers of Protege or any other information pertaining to them." This provision is also overbroad, in that it seeks to prohibit disclosure of information that is available to others from other sources and therefore not necessary to protect Protege's legitimate business interests. *Nasco, Inc. v. Gimbert,* 239 Ga. 675, 676-677 (3) (238 SE2d 368) (1977). Not only did Wolff himself possess much information about many of Protege's customers before he became employed at Protege, but much information about these customers was made available to others by Synon, which provided the software to these customers.

The trial court did not specifically address Paragraph 5 of the employment agreement, captioned "trade secrets." But Protege maintains that its customer lists are such trade secrets. We therefore address this paragraph only as it pertains to Protege's customer lists.

Upon terminating employment, an employee has the right to take with him all the knowledge he obtained so long as no property of the employer is taken. And under Georgia law, "customers are not trade secrets. Knowledge on the part of the employee concerning the names and addresses of customers is not the property of the employer." (Citations and punctuation omitted.) *Textile Rubber &c. Co. v. Shook,* 243 Ga. 587, 592 (1) (b) (255 SE2d 705) (1979). Here, as in *Shook,* the employer could have protected itself through enforceable covenants against competition and disclosure. But we have found these covenants in Protege's contract to be unenforceable, and Protege cannot now achieve the same result by claiming "trade secret" status for its customer list. Id. at 591-592 (1) (a).

(d) It is apparent that the injunction entered by the trial court does not correspond with any particular restrictive covenant in the employment contract. What is enjoined is narrower than any of the paragraphs in the agreement. For instance, although the agreement provides that Wolff may not take part in *any* capacity in business in competition with Protege or from "calling on" *any* customer with whom he "became acquainted" while at Protege, the order prohibits Wolff from "actively soliciting business" from 15 listed customers, but permits him to have contact with these customers and to do business with them if they have existing contracts with DP.

This "blue pencilling" of the employment agreement is prohibited under Georgia law even when the contract includes a severability

clause, as this contract does. A restrictive covenant must stand or fall in its entirety. "If a contract contains illegal and unenforceable clauses within a restrictive covenant, the entire covenant must fail because [the Supreme C]ourt has refused to apply the blue-pencil theory of severability. [Cits.]" *McNease*, supra at 57. See *Richard P. Rita &c. Intl. v. Kot*, 229 Ga. 314, 317 (191 SE2d 79) (1972); *Harville v. Gunter*, 230 Ga. App. 198, 200 (2) (495 SE2d 862) (1998). The trial court erred in "blue pencilling" the restrictive covenants in Wolff's employment contract with Protege; the void covenants may not be enforced in part.

2. Wolff contends the trial court erred in enjoining him from soliciting the employees of Protege. The trial court enjoined Wolff "from contacting any employee of plaintiff Protege for the purpose of inducing any such employee to leave his or her employment with Protege."

Paragraph 3, discussed above in the context of the prohibition against competition, also prohibits Wolff from "inducing or influencing any person who is engaged as an employee, agent, independent contractor or otherwise by Protege to terminate his/her engagement or to engage or otherwise participate in business activity directly or indirectly competitive with the business of Protege." But because its overbroad restrictions against competition render Paragraph 3 unenforceable, and because "blue pencilling" is prohibited, the provision prohibiting solicitation of Protege's employees is also unenforceable.

Moreover, even if this provision were otherwise enforceable, no evidence was presented showing that Wolff has violated it. Protege's claim of violation of this provision rests upon a conclusion drawn from the fact that a particular employee terminated his employment with Protege and assumed employment with DP. But Wolff testified affirmatively that he did not initiate contact with this employee, who was recruited to change employment by a "headhunter" agency. Equitable relief is improper when based upon mere allegations and conclusions unsupported by facts showing a violation, or at least a substantial threat of imminent violation, of such a provision. *The Ins. Center v. Hamilton*, 218 Ga. 597, 600 (1) (a) (129 SE2d 801) (1963). The trial court erred in enjoining Wolff from soliciting Protege employees.

3. In the cross-appeal, Protege first contends the trial court erred in construing the employment agreement under Georgia law. Paragraph 8 provides that the agreement "shall be governed by and is to be construed and enforced in accordance with the laws of the State of Illinois." The trial court concluded that the law of Georgia is controlling notwithstanding this provision. We agree.

The seminal case on this issue is *Nasco*, supra, relied upon by

the trial court. In *Nasco*, the employment agreement in issue provided that it would be governed by Tennessee law, but the trial court applied Georgia law. The Supreme Court acknowledged that normally parties are free to contract for the application of the law of a particular jurisdiction to a contract. But "[t]he law of the jurisdiction chosen by parties to a contract to govern their contractual rights will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this state. [Cits.]" Id. at 676 (2). Because this particular type of contract, containing covenants against competition and disclosure, does affect the interest of this state in the flow of information needed to support business competition, its "validity is determined by the public policy of this state. [Cits.]" Id. Consequently, when Georgia courts construe such a contract, Georgia law applies. The cases cited by Protege in support of its contention that the contractual stipulation of Illinois law must control simply apply the general principle; they do not involve restrictive covenants and are inapposite here.

4. Protege contends the trial court erred in failing to enforce the geographical restriction in Paragraph 3. We have addressed this contention in Division 1 (a), supra, and we have concluded that the restriction is overbroad.

5. Because we have concluded that the covenants against competition are unenforceable, it follows that the trial court did not err in failing to award attorney fees in favor of Protege.

6. Protege maintains the trial court erred in failing to award injunctive relief against DP Solutions for unfair trade practices under OCGA § 10-1-373 (a). The only evidence presented by Protege in support of this claim is that Wolff opened an office for DP Solutions just down the hall from the office he had maintained for Protege. Protege argues that this constitutes an attempt to confuse Protege's customers and the general public and constitutes an unfair trade practice. We do not agree.

Both DP and Protege lease suites in a large office that offers secretarial, administrative, and other business services to approximately 140 tenants. DP uses its own name and a different telephone number. No evidence was presented showing that DP represents that it has any connection with Protege or seeks to "pass off" its services as those of Protege. We find nothing in OCGA § 10-1-372 (a), which lists deceptive trade practices, prohibiting establishing an office of a clearly and truthfully represented business near that of a competitor. No injunction was warranted against DP under OCGA § 10-1-373 (a).

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED SEPTEMBER 8, 1998.

*William G. Leonard*, for appellants.
*Moore, Ingram, Johnson & Steele, David G. Matthews*, for appellee.