A99A0115. CREWS et al. v. ROGER WAHL, C.P.A., P.C.
(520 SE2d 727)

Pope, Presiding Judge.

Roger Wahl was the sole shareholder of Roger Wahl, C.P.A., P.C., and worked there from the time it opened until March 1993, when Wahl was being investigated for federal income tax evasion. Wahl subsequently pled guilty to the charges. On August 16, 1993, the Wahl firm sold its client files, client contracts, customer lists, computer software and computer records to Serotta, Maddocks & Devanny, a competing accounting firm.

On the afternoon of the sale, Earl J. Maddocks, one of the principals in the Serotta firm, went to the Wahl firm's offices to tell the remaining Wahl firm employees, who are the defendants in this

action,[1] about the sale and to pick up the Wahl firm's customer list. Although Maddocks told the defendants they could remain in their current employment, David Crews, the other CPA at the Wahl firm and one of the defendants, decided he would start his own accounting firm. He and some of the other defendants then drafted a letter announcing the formation of the new business, enclosing a release for customers to sign giving Crews access to their financial records. Crews and the others began preparing envelopes for the mailing, using the Wahl firm's customer lists.

Due to printing problems, the defendants were unable to provide Maddocks with a complete list of the Wahl firm's customers until the next day, August 17, 1993. Crews also told Maddocks that he had decided to start his own firm and that he was using the Wahl firm's customer lists to send out a mailing. Maddocks raised no objection. Within a week, the remaining defendants tendered their resignations and went to work with Crews.

The Wahl firm subsequently conducted an audit and determined that computer hardware and software containing customer records were missing from its office. On September 9, 1993, the firm filed a complaint asserting conversion and violations of the Georgia Trade Secrets Act and alleging the defendants had misappropriated trade secrets consisting of "financial data, financial plans, product plans, and a list of actual customers."

In addition to the customer list, which he used for his mailing, David Crews testified that when he left the Wahl firm on August 17, 1993, he took the contents of his desk, including computer backup tapes containing files with all of the firm's customer financial information. Crews also admitted taking postage, envelopes, a briefcase and several calculators, and admitted using the Wahl firm's copier and fax machine to send out his letters. His sister, Diane Crews, admitted taking a calculator. The other defendants who testified denied taking anything other than their own personal belongings. On September 30, 1993, Crews' attorney returned the materials Crews had taken, along with software and other items taken from the Wahl firm's office, which had come into his possession.[2]

On August 6, 1996, the Wahl firm was administratively dissolved by the Secretary of State. The case subsequently proceeded to trial and the Wahl firm was awarded a judgment in the amount of $265,000.

---

[1] The defendants are David Crews, Terry Liebowitz, Miriam Powell, Becky L. Grubb, Christina L. Martin, Margaret M. Childers and Diane L. Crews.

[2] The testimony showed some of these materials may have been inadvertently taken when a computer specialist, who leased space from the Wahl firm, hired movers to pack up and move his office.

1. The defendants contend the trial judge erred in denying their motion for directed verdict on the ground the Wahl firm lacked capacity to pursue its claims. They assert that after the firm was dissolved, it was prohibited from continuing its lawsuit because there was no evidence that this proceeding was necessary to wind up the business and affairs of the firm.

An administratively-dissolved corporation retains its corporate existence, but is prohibited from carrying on any business "except that necessary to wind up and liquidate its business and affairs." OCGA § 14-2-1421 (c). Those actions deemed necessary to wind up and liquidate a corporation's business and affairs include collecting assets, disposing of property, discharging liabilities, distributing remaining property among shareholders, and "[d]oing every other act necessary to wind up and liquidate its business and affairs." OCGA § 14-2-1405 (5).

The question of whether an administratively-dissolved corporation lacks capacity to pursue a particular course of action must be decided on a case-by-case basis. *Gas Pump v. General Cinema Beverages &c. Co.*, 263 Ga. 583, 584 (2) (436 SE2d 207) (1993). And contrary to the defendants' argument, we find our decision in *Exclusive Prop. v. Jones*, 218 Ga. App. 229 (460 SE2d 562) (1995) is not controlling of the facts in this case. In that case, we affirmed the grant of summary judgment to the defendant in a legal malpractice case after the corporate plaintiff was administratively dissolved while the action was pending. Id. at 230 (1). We expressly limited our decision to the facts in that case, where there was no evidence the corporate plaintiff had taken any action to wind up its affairs and the corporation never contended that the lawsuit was a necessary part of liquidating its business. Id.

In contrast, the Wahl firm was clearly in the process of concluding its business. It had sold its primary corporate assets to the Serotta firm, and there was evidence at trial that a short time earlier, Wahl had been declared mentally incompetent and his wife had been appointed his guardian. Some months later he pled guilty to tax fraud. Thus, there was virtually no possibility that Wahl would ever operate his accounting business again.

This lawsuit, filed within a few weeks after the sale contract was signed, sought to reclaim possession of certain corporate assets the Wahl firm alleged defendants had misappropriated. The collection of corporate assets is one of the enumerated activities a dissolved corporation is entitled to pursue. OCGA § 14-2-1405. Moreover, many of the assets at issue were the subject of the sale contract with the Serotta firm, and thus any misappropriation of those assets clearly had the potential to affect the sale. Under these circumstances, we find the lawsuit was necessary to wind up and liquidate the business and

affairs of the Wahl firm, and there was no error in denying the defendants' motion for directed verdict on this ground.

2. The defendants also contend the trial court erred in denying their motion for directed verdict on the ground that the Wahl firm had sold its trade secrets to the Serotta firm prior to their alleged misappropriation by defendants.[3]

The sale between the two firms closed on the morning of August 16, 1993, with the signing of the sale contract. Under the contract, the Serotta firm was buying

> [a]ll client files and contracts, both open and closed, all client lists, both open and closed, including all computer records (both hard copies and floppy disks) and computer software relating thereto and all information on the computer hardware relating thereto.

The contract provided that the Serotta firm took possession of these assets at closing.

Under the plain terms of the sale contract, therefore, the Serotta firm owned the customer lists, computer software and customer files at the time they were removed from the Wahl firm's offices. However, in Georgia, the ownership of an accountant's working papers is controlled by statute. Under OCGA § 43-3-32 (a):

> All statements, records, schedules, working papers, computer printouts, computer tapes, and memoranda made by a certified public accountant or public accountant incident to, or in the course of, professional service to clients . . ., except reports submitted . . . to a client, shall be and remain the property of such certified public accountant or public accountant and his or her partners, fellow shareholders, or fellow members of the firm, in the absence of an express agreement between such certified public accountant or public accountant and the client to the contrary. No such *statement, record, schedule, working paper, or memorandum* shall be sold, transferred, or bequeathed, without the consent of the client or his personal representative or his assignee, to anyone other than one or more surviving part-

---

[3] We reject the Wahl firm's contention the defendants waived their right to assert this ground by failing to plead it as a specific negative averment in their answers. While the Wahl firm characterizes this ground as a lack of capacity defense, it is instead an assertion that the Wahl firm failed to prove an essential element of its claim: ownership of the trade secrets it claims were misappropriated. See *Kitfield v. Henderson, Black & Greene*, 231 Ga. App. 130, 134 (5) (498 SE2d 537) (1998) (to recover on misappropriation claim, plaintiff must establish property right or protectable interest in work product).

ners, fellow shareholders, or fellow members of the firm of such certified public accountant or public accountant.

(Emphasis supplied.) Under this provision, absent an agreement with the client to the contrary, an accountant retains ownership of all of his working papers, but may not transfer ownership in any statement, record, schedule, working paper or memorandum without the client's consent.

The Wahl firm contends that this statute makes its sale contract with the Serotta firm an executory agreement only. Although the contract states the Serotta firm took possession of its customer lists and other documents, the Wahl firm argues the contract did not become binding until the clients consented to the transfer of their records to the Serotta firm. And because no clients had consented at the time the defendants used the mailing list and took other information, the Wahl firm asserts it still owned that information.

While we agree that the sale from one accounting firm to another of any information covered by OCGA § 43-3-32 (a) is subject to a condition that the client consent to the transfer, we do not agree that the statute applies to all client information in the possession of an accountant. We find that the transfer of the Wahl firm's customer list to the Serotta firm is not governed by OCGA § 43-3-32 (a) because there is no indication that the statute was intended to apply to such lists.

The interpretation of statutes is a question of law for the court. *Monticello, Ltd. v. City of Atlanta*, 231 Ga. App. 382, 383 (1) (499 SE2d 157) (1998). "It is axiomatic that in interpreting a plain and unambiguous enactment we must give its words their plain and ordinary meaning, except for words which are terms of art or have a particular meaning in a specific context." Id.; OCGA § 1-3-1 (b). However, "[s]tatutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation." *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987).

As an initial matter, we note the statute does not make reference to client lists.

Thus, the venerable principles of statutory construction, *expressio unius est exclusio alterius* (the express mention of one thing implies the exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those omitted were intended to be excluded) are applicable. [Cit.]

*Pruitt Corp. v. Strahley*, 270 Ga. 430, 431 (510 SE2d 821) (1999). The application of these principles supports the conclusion that the legislature did not intend to require client consent for the transfer of a firm's client list.

This interpretation is further supported by an examination of the purposes behind the statute. See OCGA § 1-3-1 (a) (In statutory interpretation, court "shall look diligently for the intention of the General Assembly.") While this provision vests the ownership of an accountant's working papers in the accountant, it provides that client information contained in such documents may not be relinquished by sale or transfer of the documents without the client's consent. The clear intent of such a provision is to preserve the accountant's proprietary interest in his own work product, while at the same time giving the client the final say over the transfer of any confidential information provided during the preparation of such materials.

The legislative intent behind OCGA § 43-3-32 (a) has not previously been discussed by the Georgia appellate courts, but the Ohio Court of Appeals has construed a virtually identical provision under Ohio law. The court explained the reasoning behind such a statute:

> Based upon the reasonable expectations of the parties involved, and the public policy against such action, a duty is imposed by law upon an accountant not to wrongfully disclose information given him in confidence by his client. The preservation of a client's confidential information is not a mere ethical duty, it is a legal duty as well. The unauthorized disclosure of any secrets or other confidential information obtained during the professional association of an accountant and his client will give rise to an action for breach of contract.

*Wagenheim v. Alexander Grant & Co.*, 19 Ohio App. 3d 7, 12 (482 NE2d 955) (1983).

We agree the intent of such a provision is to protect confidential information provided by a client to his accountant, but its protections do not extend to all client information. The uncodified preamble to the Public Accountancy Act, of which OCGA § 43-3-32 is a part, states that the law is being enacted "to provide for confidentiality of *certain* papers and communications." (Emphasis supplied.) Ga. L. 1977, pp. 1063-1064. Thus, it is reasonable to conclude the legislature did not intend that all information communicated between an accountant and a client is to be considered confidential. The Wahl firm's customer list does not contain any client secrets or confidences. It is merely a list of the names and addresses of those individuals and corporations for whom the Wahl firm has provided accounting

services. Accordingly, the list does not fall within the purposes of OCGA § 43-3-32 (a).[4]

This interpretation is supported by reviewing the statute as a whole. Subsection (b) of the statute sets forth Georgia's accountant/client privilege, and the two subsections of the statute must be read together as furthering the same goal of client confidentiality. See *Ernst & Ernst v. Underwriters Nat. Assurance Co.*, 178 Ind. App. 77 (382 NE2d 897) (1978) (holding that a virtually identical provision of Indiana law "supports and reinforces" the intent behind the state's accountant-client privilege).

In discussing the accountant-client privilege, the Supreme Court of Georgia has approved an analogy between that privilege and the attorney-client privilege due to the similarity between the two. *Gearhart v. Etheridge*, 232 Ga. 638, 641 (208 SE2d 460) (1974). It is well-settled that the fact of an attorney's employment and the name of the person employing him is not privileged. *Fowler v. Sheridan*, 157 Ga. 271, 275 (2) (121 SE 308) (1924); *Parrott v. State*, 206 Ga. App. 829, 835-836 (6) (427 SE2d 276) (1992). The basis for this rule was admirably explained in the case of *In re Shargel*, 742 F2d 61, 63 (2nd Cir. 1984):

> Absent special circumstances, disclosure of the identity of the client and fee information stand on a footing different from communications intended by a client to explain a problem to a lawyer in order to obtain legal advice. . . . [A] general rule requiring disclosure of the fact of consultation does not place attorneys in the professional dilemma of cautioning against disclosure and rendering perhaps ill-informed advice or learning all the details and perhaps increasing the perils to the client of disclosure.
>
> Where no such dilemma is created for the lawyer, information is not protected by the privilege even though the client may strongly fear the effects of disclosure, including incrimination.

We believe this distinction holds true for the accountant and his client as well. A general rule that the identity of an accountant's clients

---

[4] While a client list may be subject to confidential treatment under the Georgia Trade Secrets Act, the information itself is not inherently confidential. "[C]ustomers are not trade secrets." *Wolff v. Protege Sys.*, 234 Ga. App. 251, 253 (1) (c) (506 SE2d 429) (1998), quoting, *Textile Rubber &c. Co. v. Shook*, 243 Ga. 587, 592 (1) (b) (255 SE2d 705) (1979). Confidentiality is afforded only where the customer list is not generally known or ascertainable from other sources and was the subject of reasonable efforts to maintain its secrecy. See OCGA § 10-1-761 (4). Even assuming the Wahl firm's customer list was a trade secret, this in and of itself does not render the document subject to the provisions of OCGA § 43-3-32 (a).

is not confidential will not affect the quality of service an accountant provides or unduly prejudice the client.

Accordingly, we hold that the requirement under OCGA § 43-3-32 (a) that a client consent to the transfer of his accountant's working papers does not apply to an accounting firm's client list.[5]

In this case, because there was no condition precedent to the Wahl firm's transfer of its customer list to the Serotta firm, the Serotta firm owned the customer list as of the closing on the morning of August 16, 1993. Thus, the Wahl firm had no ownership interest in the list at the time of the alleged misappropriation. Therefore, we reverse the trial court's denial of the defendants' motion for directed verdict as it related to any claims regarding the client list.

We cannot say as a matter of law, however, that the remaining documents at issue, including the computer back-up tapes and the software, do not fall within the provisions of OCGA § 43-3-32 (a). The evidence showed those documents contained confidential client information, and the transfer of such information to the Serotta firm thus required client consent. Accordingly, the defendants were not entitled to a directed verdict as to those documents on the ground stated.[6]

3. The defendants also assert that the evidence was insufficient to support either the jury's verdict or the award of damages. We have held that the jury erroneously considered claims relating to the Wahl firm's client list. Because the jury issued a summary verdict finding in favor of the Wahl firm and granting lump sum damages in the amount of $265,000, we cannot determine which items, if any, other than the client list the jury found had been converted or misappropriated. Because we do not know the jury's findings, we cannot determine if there was sufficient evidence to support such findings. And because the damages were not apportioned among the various items, we cannot determine which of the damages are attributable to the customer list and which, if any, are attributable to other items. Therefore, our reversal of the trial court's denial of the directed verdict as it relates to the customer list necessitates a new trial on the remaining claims. See *Bowdish v. Johns Creek Assoc.*, 200 Ga. App.

---

[5] Moreover, any proposed construction of a statute "must not result in unreasonable consequences and must square with common sense and sound reasoning." (Citations and punctuation omitted.) *Monticello, Ltd.*, 231 Ga. App. at 384 (1). Our conclusion has the practical effect of allowing one firm to purchase another firm's client list and then use that list to contact the clients and obtain the requisite consent for the transfer of any confidential files.

[6] We note, however, that the Supreme Court of Georgia has held, and the trial court charged the jury, that under OCGA § 43-3-32 (a), a departing accountant can "properly copy records, statements, working papers, and other materials 'prepared' by him, but that he could not properly copy for his own use such materials 'made' by other accountants" of the firm. *Singer v. Habif, Arogeti & Wynne*, 250 Ga. 376, 379 (3) (297 SE2d 473) (1982).

93, 96 (5) (406 SE2d 502) (1991).

4. The defendants also assert a number of enumerations alleging errors in the jury charge. Because these issues are likely to recur on remand, we will address them. See *Howell v. Styles*, 221 Ga. App. 781, 785 (5) (472 SE2d 548) (1996).

(a) The defendants contend the trial court erred in charging the jury pursuant to OCGA § 11-2-722 of the Uniform Commercial Code. We agree.

To determine whether a sales contract is governed by the UCC, "we must look to the primary or overall purpose of the transaction." *Mail Concepts v. Foote & Davies, Inc.*, 200 Ga. App. 778, 779 (1) (409 SE2d 567) (1991). When the predominant element is the furnishing of services, the contract is viewed as a service contract and the UCC does not apply. *Southern Tank & Equipment Co. v. Zartic, Inc.*, 221 Ga. App. 503, 504 (471 SE2d 587) (1996). Accountants are in the business of supplying services to their clients. The sale contract in this case was structured to allow the Serotta firm to continue servicing the Wahl firm's accounts (subject to the clients' consent), and the principal consideration was the Serotta firm's payment to the Wahl firm of a percentage of the fees generated from those accounts. Thus, the furnishing of services was the predominant element of the contract. And assuming, without deciding, that the customer list fell within the definition of goods under the UCC, as the Wahl firm argues, the list would be incidental to the main intent of the contract: continuing service to the Wahl firm's clients. Accordingly, it was error to charge the jury in accordance with the UCC. See *Mail Concepts*, 200 Ga. App. at 780 (1). Cf. *Prof. Marketing Distrib. v. Feldman Assoc.*, 202 Ga. App. 338, 339 (1) (414 SE2d 666) (1991).

(b) The defendants next argue it was error to charge the jury with language from OCGA § 16-8-13, the statute setting forth criminal penalties for theft of a trade secret. That statute specifically states that it will not affect the provisions of the Code "pertaining to civil offenses and remedies involving the misappropriation of a trade secret." OCGA § 16-8-13 (e) (2). Because the statute by its terms is inapplicable to this case, we find it was error to include language from OCGA § 16-8-13 in the jury charge.

(c) The defendants also contend it was error to charge the jury on the law of fiduciary duty because the Wahl firm dismissed Count 3 of its complaint, which asserted a claim for breach of fiduciary duty. The defendants do not contend that the charges contained incorrect statements of the law, but simply that the law was inapplicable to the facts of this case. However, the Wahl firm correctly notes that the misappropriation of a trade secret can result from the breach of a confidential relationship. OCGA § 10-1-761 (1). And we find no error in those portions of the court's charge (the Wahl firm's requests to

charge nos. 15 and 16) defining the principal/agent relationship as such a charge could be relevant to the elements of the plaintiff's case.

Nevertheless, by dismissing its claim for breach of fiduciary duty, the Wahl firm elected not to proceed under the common law of fiduciary duty, but rather to limit its recovery to the remedy under the Georgia Trade Secrets Act. We have held under that act, in the absence of a covenant to the contrary, a departing employee has the right to take with him and make use of all the knowledge he obtained so long as no property of the employer is taken. *Wolff v. Protege Sys.*, 234 Ga. App. 251, 253 (1) (c) (506 SE2d 429) (1998). Moreover, any of the defendants who were C.P.A.'s or public accountants had a right to copies of all of the working papers and other materials prepared by them. *Singer v. Habif, Arogeti & Wynne*, 250 Ga. 376, 379 (3) (297 SE2d 473) (1982); OCGA § 42-3-32 (a). While the trial court charged the jury on these principles of law, the court also charged under general agency law that an agent may not make a profit for himself "out of the relationship or out of knowledge obtained from the relationship" with his principal. These conflicting charges could have been confusing to the jury. A jury charge "that could confuse the jury as to the contentions of the parties and the real issues in the case" can be grounds for a new trial. *Uniroyal Goodrich Tire Co. v. Ford*, 218 Ga. App. 248, 257 (4) (b) (461 SE2d 877) (1995), modified on other grounds, 267 Ga. 226 (476 SE2d 565) (1996). Therefore, we hold it was error to give that portion of the charge under general fiduciary law set out in the Wahl firm's request to charge no. 17.

(d) The defendants further assert error in the trial court's instruction stating that "[a]n employee owes a duty of loyalty, faithful service and regard for an employer's interest." They argue that this charge, taken from our decision in *Lane Co. v. Taylor*, 174 Ga. App. 356, 362 (5) (330 SE2d 112) (1985), represents an incomplete statement of the law and was not adjusted to the facts of this case. As we find this to be an accurate statement of the law, we find no error.

(e) The trial court also charged the jury in accordance with OCGA § 51-12-30 and prior case law that one who procures an injury to another can be a joint wrongdoer and can be subject to liability. However, the charge omits the word "maliciously," which appears in the statute; liability is imposed upon a person who "maliciously procures" a wrong. OCGA § 51-12-30. The use of the term "maliciously" is construed liberally under this provision, and does not require personal ill will or animosity, only any unauthorized interference without legal justification or excuse. *Nager v. Lad'n Dad Slacks*, 148 Ga. App. 401, 404 (3) (251 SE2d 330) (1978). While we find the better practice may be to track the language of the statute, while providing a definition of the term "malicious" in this context, we cannot say that the charge as given was an erroneous statement of the law. We

note however, that defendants did not raise and we do not address the applicability of this charge under the facts of this case.

*Judgment reversed and remanded. Smith and Eldridge, JJ., concur.*

DECIDED JULY 8, 1999.

*Daniel & Lowe, Neal K. Daniel, Garrett & Gilliard, Michael C. Garrett, Chamberlain, Hrdlicka, White, Williams & Martin, John W. Sognier*, for appellants.

*Dunstan, Dunstan & Cleary, James R. Dunstan, Johnston, Wilkin & Williams, Wendell E. Johnston, Jr., William J. Williams*, for appellee.