77364. CHEM TECH FINISHERS, INC. v. PAUL MUELLER COMPANY.
77365. DALTON SHEET METAL COMPANY, INC. v. CHEM TECH FINISHERS, INC.
77366. DALTON SHEET METAL COMPANY, INC. v. PAUL MUELLER COMPANY.

(375 SE2d 881)

SOGNIER, Judge.

Chem Tech Finishers, Inc. (Chem Tech), a commercial dyer and finisher of carpet, brought suit against Dalton Sheet Metal Company, Inc. (Dalton) and Paul Mueller Company (Mueller) to recover damages for breach of warranty in connection with the sale to Chem Tech of heat transfer equipment for use in its dye becks, which equipment was designed and manufactured by Mueller and distributed by Dalton. The trial court granted summary judgment to Mueller, and Chem Tech appeals in Case No. 77364. In Case No. 77365, we granted Dalton's application for interlocutory appeal of the trial court's denial of its motion for summary judgment against Chem Tech. In Case No. 77366, Dalton cross appeals from the grant of summary judgment to Mueller.

The record reveals that in the fall of 1982 Chem Tech sought to replace the heating coils in its dye becks and entered into negotiations with Dalton, which recommended replacing the coils with Temp-Plates manufactured by Mueller. Dalton furnished Chem Tech with sales literature provided by Mueller and introduced Chem Tech personnel to Mueller's authorized local agent, Kent L. Fredrick. The literature contained representations that the Temp-Plates would generate a rate of temperature rise in the dye becks of 3 degrees per minute, and that use of the Temp-Plates would result in energy savings. Chem Tech decided to purchase the Temp-Plates, and Dalton contracted to purchase them from Mueller and resell them at a profit to Chem Tech. The contract between Mueller and Dalton expressly limited Mueller's liability to repair or replacement of defective goods within one year of shipping. The plates were made to correspond to Chem Tech's specifications, and were shipped by Mueller directly to Chem Tech in August 1983. The plates did not perform as the Mueller literature represented, and actually resulted in an increased energy expenditure. The evidence is in conflict whether, when, and to whom Chem Tech gave notice of the problem, but it is uncontroverted that in May 1984 the Temp-Plates were replaced by Mueller.

1. In Case No. 77364, Chem Tech contends the trial court erred by granting summary judgment in favor of Mueller on the ground that no privity existed between them because where, as here, the manufacturer's warranty clearly was intended to extend to an identifiable third party, no privity is required.

We note initially that although the requirement of privity has been abolished for tort actions and actions against manufacturers of defective products brought by "any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property . . . ," OCGA § 51-1-11 (a) and (b) (1), no such change has been effected as to corporations damaged by defective products. Chem Tech argues that in *Stewart v. Gainesville Glass,* 131 Ga. App. 747 (206 SE2d 857) (1974), aff'd 233 Ga. 578 (212 SE2d 377) (1975), this court held that an express warranty runs only to the original purchaser *except* where it appears "that both parties to the contract intended that a third person should be the beneficiary," id. at 753, and that the facts sub judice fit into the exception, rather than the rule, in *Stewart.* However, nothing in the contract between Mueller and Dalton obligates Mueller to render any performance whatsoever to Chem Tech—only to Dalton. While it is true that the parties to that contract knew that Chem Tech would eventually benefit from their contract, "[i]n order for a third party to have standing to enforce a contract under [OCGA § 9-2-20] it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. [Cits.]" *Backus v. Chilivis,* 236 Ga. 500, 502 (224 SE2d 370) (1976). Moreover, nothing in the warranty contained in Mueller's sales brochures indicates Mueller intended that its representations extend or apply specifically to Chem Tech, and " 'if a defendant is not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on the implied or express warranty, if any, arising out of the prior sale by the defendant to the original purchaser, such as distributor or retailer from whom plaintiff purchased the product. [Cits.]' [Cits.]" *Thomaston v. Ft. Wayne Pools,* 181 Ga. App. 541, 543 (352 SE2d 794) (1987). Accordingly, we do not agree with Chem Tech that it was entitled to maintain an action based on warranty here where no privity existed between the parties, and the trial court properly granted summary judgment in favor of Mueller. See id.

2. Because Chem Tech may not recover on warranty claims against Mueller, see Div. 1, we need not address Chem Tech's alternate theory that it may recover because Mueller breached its limited warranty to repair or replace the defective Temp-Plates by failing to respond to Chem Tech's complaints for over eight months.

3. In Case No. 77365, Dalton contends the trial court erred by denying its motion for summary judgment against Chem Tech because it had limited its warranty to Chem Tech to repair or replacement of defective parts, and replacement was accomplished when Mueller replaced the Temp-Plates in May 1984.

The contract between Dalton and Chem Tech was prepared by

Dalton and contained the following language: "The equipment *manufactured by us* is guaranteed to be free from all latent defects in material and workmanship disclosed under normal use and service, and should any part thereof be found within one year from date of shipment to be so defective at the time furnished, we will furnish a replacement or repair said part, not including labor. . . . This guarantee is issued expressly in lieu of all other warranties expressed or implied by law or trade usage, and of all other obligations or liabilities on our part, and we neither assume nor authorize any person to assume for us any other liability in connection with the sale of our apparatus." (Emphasis supplied.) Although it is undisputed that Dalton did not manufacture the Temp-Plates, but merely purchased them from Mueller and resold them to Chem Tech at a profit, Dalton argues that the limitation of warranty must be construed to apply to goods it distributed or sold, as well as those it manufactured, because the only goods which were the subject of the contract between it and Chem Tech were goods it did *not* manufacture. We do not agree.

We concur with the trial court's reasoning that Dalton's argument would require us not only to construe the language of the contract, but to revise it. " 'If [a] writing contains a warranty of some kind or to some extent, parol evidence will not be admitted to extend, enlarge, or modify that which the writing specifies. [Cits.]' [Cit.] [Emphasis omitted.] Courts are not at liberty to revise contracts while professing to construe them. [Cits.]" *Stuckey v. Kahn*, 140 Ga. App. 602, 606 (1) (231 SE2d 565) (1976). We find the language in the contract to be unambiguous in referring only to goods *manufactured* by Dalton. " '(N)o construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation.' [Cit.]" *Citicorp Indus. Credit v. Rountree*, 185 Ga. App. 417, 421 (364 SE2d 65) (1987). Further, the contract was drawn by Dalton, and could easily have been modified by it to reflect what it now asserts was its true intention. Thus, even assuming an ambiguity, the preferred construction would be that which goes most strongly against Dalton as the drafter. OCGA § 13-2-2 (5). See also *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556, 557 (307 SE2d 499) (1983). Accordingly, the trial court did not err by denying Dalton's motion for summary judgment against Chem Tech.

4. Dalton denominates its appeal in Case No. 77366 a cross-appeal from the trial court's grant of summary judgment to Mueller. However, Mueller is not an appellant, and consequently even assuming Dalton had standing to appeal from a grant of summary judgment to its co-defendant, see generally *Savannah Inn-Towner &c. v. McCauley*, 149 Ga. App. 209 (2) (253 SE2d 796) (1979), any such appeal should have been filed within the time provided by law for direct ap-

peals. As this appeal was filed within 30 days of entry of the order granting summary judgment to Mueller, see OCGA § 5-6-38 (a), we grant Mueller's motion to dismiss Dalton's appeal in this case.

Judgment affirmed in Case Nos. 77364 and 77365. Appeal dismissed in Case No. 77366. Deen, P. J., and Carley, J., concur.

DECIDED NOVEMBER 18, 1988 —
REHEARINGS DENIED DECEMBER 2, 1988 —

*John T. Avrett*, for Chem Tech.

*Kinney, Kemp, Pickell, Sponcler & Joiner, L. Hugh Kemp, Bovis, Kyle & Burch, J. Greg Tharp*, for Paul Mueller Co.

*McCamy, Phillips, Tuggle, Rollins & Fordham, Joseph T. Tuggle, Jr., Chambers, Mabry, McClelland, & Brooks, Genevieve L. Frazier*, for Dalton Sheet Metal.