A98A1122. ALPHA BETA DICKERSON SOUTHEASTERN, INC. v. WHITE COMPANY.
(509 SE2d 351)

POPE, Presiding Judge.

White Company, which was involved in the offset printing business for many years, agreed to transfer its offset printing contracts and accounts to Alpha Beta Dickerson Southeastern, Inc. In exchange, Alpha Beta agreed to purchase White's offset printing inventory. The president of Alpha Beta prepared the agreement, which provides in pertinent part: "Upon verification by A.B. Dick Southeastern of WHITE'S physical inventory, relative to the offset industry, that is deemed 'useable and sellable', A.B. Dick Southeastern agrees to pay to WHITE'S the dealer cost available to A.B. Dick Southeastern for said determined inventory."

Although they did not name him in the contract, White and Alpha Beta agreed that Grady Singletary, an Alpha Beta employee who had previously worked for White, would prepare a list of White's offset printing inventory. Pursuant to instructions from White and Alpha Beta, Singletary made a list of the inventory that he deemed

to be usable and sellable. Thereafter, Alpha Beta President Curtis Johnson refused to buy all the inventory on the list, claiming that Alpha Beta could use only some of the listed inventory.

White then sued Alpha Beta for breach of contract, fraud, bad faith and stubborn litigiousness, asserting that Alpha Beta was obligated by the agreement to buy all the listed inventory deemed usable and sellable by Singletary. Alpha Beta answered the lawsuit and counterclaimed for breach of contract, fraud and bad faith, contending that Singletary's inventory list was merely a preliminary step after which Alpha Beta would decide what inventory was usable and sellable. The case was tried before a jury, which awarded White $91,482 on its complaint and also found for White on Alpha Beta's counterclaim. The trial court entered judgment for White on the verdict.

Alpha Beta appeals, challenging the sufficiency of the evidence supporting the verdict and the court's refusal to give a requested jury charge. The challenges are without merit, and we affirm the judgment.

1. Alpha Beta argues that there is no evidence from which the jury could have found that under the contract Singletary, instead of Johnson, was authorized to determine the usable and sellable White inventory. On appeal, we must construe the evidence in favor of the verdict and judgment. *James v. Tyler*, 215 Ga. App. 479, 480 (1) (451 SE2d 506) (1994). "It is well established that this court will not pass on the weight, but [will pass on] the sufficiency of the evidence. If there is 'any evidence' to support the verdict we cannot disturb it." (Citations and punctuation omitted.) *Bishop Contracting Co. v. North Ga. Equip. Co.*, 203 Ga. App. 655, 657 (1) (417 SE2d 400) (1992). Contrary to Alpha Beta's argument, there is some evidence from which the jury could have found that under the contract Singletary was authorized to determine the usable and sellable inventory.

"There are three steps in the process of contract construction. The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity. We presume that the trial court proceeded properly even though our record does not clearly reveal the process employed. Ambiguity in a contract may be defined as duplicity, indistinctness, an uncertainty of meaning or expression." (Citations and punctuation omitted.) *Karlan, Inc. v. King*, 202 Ga. App. 713, 715 (1) (415 SE2d 319) (1992). The contract in the instant case, even after applying the rules of construction found in OCGA § 13-2-2, is ambiguous. As the parties both agree, the contract plainly provides that Alpha Beta is to verify the inventory that is usable and sellable.

But the contract is ambiguous in that it does not identify who at Alpha Beta is to make the verification.

"Parol evidence is admissible to explain all ambiguities, the question as to what was intended being an issue of fact for the jury. Even after the introduction of parol evidence, there remains a conflict in the evidence as to the intent of the parties, and this disagreement is an evidentiary, factual matter for resolution by the jury and not a matter of law for determination by the court." (Citations and punctuation omitted.) *Karlan, Inc. v. King*, 202 Ga. App. at 715-716. The parol evidence in the instant case is in conflict as to whom the parties intended to determine the usable and sellable inventory. Alpha Beta presented evidence that the parties intended Johnson to make the final determination. White, however, presented testimony that the parties intended that Singletary would make the determination.[1]

White's president swore in an affidavit and testified at trial that the parties agreed Alpha Beta would buy all the usable and sellable inventory as determined by Singletary. He further testified that, in negotiating the contract, the parties never discussed Johnson reviewing the inventory list prepared by Singletary. In fact, Alpha Beta's own general sales manager, Jerry Carter, who helped negotiate the terms of the contract, testified that he could not remember ever telling White that Johnson would review the inventory list prepared by Singletary to determine what was usable and sellable.

Walter McConnell, who helped negotiate the agreement on behalf of White, testified that Singletary was the expert on White's inventory because he was familiar with all of it from his 20 years as a White employee. McConnell stated that Carter suggested having Singletary take the inventory, the purpose of which was to determine the usable and sellable inventory that Alpha Beta would buy under the contract. He also testified that Carter never mentioned having Johnson review Singletary's inventory list.

In addition, the undisputed evidence shows that Singletary did

---

[1] We note that Paragraph 7 of White's complaint alleges that Alpha Beta agreed to "purchase all of White's physical inventory and supplies relative to the offset industry that were deemed 'useable and saleable' by a designated representative of [Alpha Beta], Mr. Grady Singletary." In its answer to the complaint, Alpha Beta replied: "Defendant ALPHA BETA admits the general allegations contained in Paragraph 7 of Plaintiff's Complaint."

Additionally, White served an interrogatory asking Alpha Beta to state its "understanding of the background behind the agreement . . . including a description of the circumstances which [led] to the signing of this agreement; the individuals who represented your company in negotiating said transaction; and whether said agreement was a memorialization of any prior oral agreement." In response, Alpha Beta said, in part, "Defendant's Sales Manager, Jerry Carter, talked with The White Company, generally as alleged in Paragraph 7 of Plaintiff's Complaint. After reaching the oral agreement, it was then reduced to a written agreement. . . ."

in fact make a list of the White inventory that he believed to be usable and sellable. At his deposition, Singletary testified: "The only instructions I received was sitting down with Jerry Carter at lunch, after he met with Jerry McConnell earlier that day. He told me that I was going to be the one to go in there and do the inventory of the parts and everything, because The White Company felt like that would be the best thing, would be to let me do it. . . . And they trusted me to do it." At trial, Singletary reiterated that Carter told him that Alpha Beta and White had agreed that Singletary would review the inventory, and that he then listed only the inventory that he thought was usable.

Although the evidence is in conflict as to whom the parties intended to determine the usable and sellable inventory, it was the jury's function to resolve that conflict. See *Dept. of Transp. v. Blair*, 220 Ga. App. 342, 344 (1) (a) (469 SE2d 446) (1996). Because there is some evidence to support the finding that the parties intended for Singletary to determine the usable and sellable inventory, Alpha Beta's challenge to the sufficiency of the evidence is without merit.

2. Alpha Beta claims the court erred in refusing to give its requested charge on absolute and conditional contracts. Alpha Beta, however, failed to except properly to the court's ruling and therefore has not preserved the issue for appeal.

"To be reviewable on appeal, an objection to the jury charge must be unmistakable in directing the attention of the trial court to the claimed error and must point out distinctly the portion of the charge challenged; the grounds of error must be stated with sufficient particularity to leave no doubt as to the portion of the charge challenged or as to the specific ground of challenge, and must fully apprise the court of the error committed and the correction needed. [Cit.] Such specificity is required to ensure that the trial judge is afforded an opportunity to correct any error in the instructions prior to verdict so that the necessity of an appeal will be obviated. [Cit.] The grounds must be stated distinctly enough for a reasonable judge to understand its nature, enabling him to rule intelligently on the specific point. [Cits.]" *Bedeski v. Atlanta Coliseum*, 224 Ga. App. 435, 436 (1) (480 SE2d 881) (1997).

Here, after the court charged the jury, Alpha Beta simply stated, "we take exception to our Number 3 on absolute and conditional contracts and Number 8 on duty to mitigate." This exception did not comply with the statutory requirement that "in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." OCGA § 5-5-24 (a). Because Alpha Beta did not state distinctly the matter to which it objected and the grounds of

the objection, there is nothing for us to review.

3. White's motion for an award of frivolous appeal damages is denied because, contrary to White's claims, we find no reason for concluding that Alpha Beta appealed for delay only. See OCGA § 5-6-6; Court of Appeals Rule 15 (b); *Starrett v. Commercial Bank of Ga.*, 226 Ga. App. 598, 601 (3) (486 SE2d 923) (1997).

*Judgment affirmed. Beasley and Ruffin, JJ., concur.*

DECIDED NOVEMBER 13, 1998.

*Denney, Pease, Allison & Kirk, Ray L. Allison, Elizabeth S. Morgan*, for appellant.

*Self, Mullins, Robinson, Marchetti & Kamensky, Lucius M. Layfield III*, for appellee.