A99A1904, A99A1905. KUEHN v. SELTON & ASSOCIATES, INC. et al.; and vice versa.
(530 SE2d 787)

JOHNSON, Chief Judge.
In these appeals we decide whether the parties to an employment contract were entitled to summary judgment regarding the enforceability, performance and meaning of noncompetition and other provisions contained in the agreement.

Brad Kuehn worked for Selton & Associates, Inc. ("SAI") as a commercial real estate agent and broker. He negotiated office lease transactions with landlords on behalf of SAI's clients, which were tenants. When the transactions were completed, the landlords paid SAI commissions, which SAI shared with its agents who handled the transactions. Believing that SAI was not paying him the commissions it owed him, Kuehn resigned from his position. A short time

later, he established Atlanta Office Realty, Inc. ("AOR"), of which he was the only officer and employee. During his affiliation with AOR, Kuehn used information received during his tenure at SAI and competed with SAI in some lease transactions.

Kuehn sued SAI and its sole shareholder, Daniel Selton, for breach of contract and conversion, seeking to recover commissions he believes were due him but not paid. SAI countersued, claiming Kuehn breached the contract's noncompetition and other provisions and improperly used and disclosed confidential information and trade secrets belonging to SAI after leaving the company.

The trial court denied summary judgment to Kuehn as to the enforceability of the restrictive covenant, finding that the covenant not to compete was reasonable, and granted partial summary judgment to SAI on Kuehn's claims for breach of an oral contract and conversion. The trial court denied summary judgment to SAI on the issues of whether Kuehn gave proper notice of termination, whether he violated the restrictive covenant, whether he breached the agreement by not finishing deals through SAI, whether he divulged trade secrets and confidential information, and whether Kuehn breached his fiduciary duties. The trial court found that issues regarding attorney fees and punitive damages would also be left for the jury and provided in its order that any matters not specifically addressed in the order but contained in the parties' motions for summary judgment were denied. Kuehn appeals in Case No. A99A1904. SAI and Selton appeal in Case No. A99A1905.

### Case No. A99A1904

1. Paragraph 26 of the employment agreement provides in pertinent part that: "Upon expiration or cancellation of this contract . . . [Kuehn] will not compete with SAI on extensions, expansions, or renewals of SAI clients as long as Tenant remains in the building or project."

Kuehn contends the trial court erred in denying his motion for partial summary judgment regarding the enforceability of this restrictive covenant because it is too broad to be enforceable. We agree.

A contract in general restraint of trade or which tends to lessen competition is against public policy and is void. *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992). A restrictive covenant contained in an employment contract, however, is considered to be in partial restraint of trade and will be upheld if the restraint imposed is reasonable, is founded on a valuable consideration, is reasonably necessary to protect the interest of the party in whose favor it is imposed and does not unduly prejudice the interest of the public.

Id. A restrictive covenant will be enforced only if it is reasonable in terms of duration, territory, and the scope of activity precluded. *Chaichimansour v. Pets Are People Too, No. 2*, 226 Ga. App. 69, 70 (1) (485 SE2d 248) (1997); *Sunstates Refrigerated Svcs. v. Griffin*, 215 Ga. App. 61, 62 (2) (449 SE2d 858) (1994). To be reasonable, it must be strictly limited as to time and territorial effect. *Davis v. Albany Area Primary Health Care*, 233 Ga. App. 311, 312 (503 SE2d 909) (1998). If any clause within a restrictive covenant is unenforceable, the entire covenant must fail; we will not apply the blue pencil theory of severability to restrictive covenants in employment contracts. *Wolff v. Protege Systems*, 234 Ga. App. 251, 254-255 (1) (d) (506 SE2d 429) (1998).

The restriction at issue in this appeal is unreasonable in terms of duration. It cannot be determined from the contract how long Kuehn's activities would be restricted. The language "as long as Tenant remains in the building or project" renders the restriction operable for an indefinite number of years. It does not limit itself to the initial lease term (which, incidentally, might be any number of years) but includes all extensions, expansions and renewals of SAI clients. In fact, a close reading of the language shows that Kuehn would be precluded from competing with former clients of SAI which entered into renewals, extensions or expansions of leases so long as they remain in the building, even if the renewals, extensions or expansions were negotiated by the tenants and landlords independently of SAI. The restriction has the potential to be effective for decades. The covenant is therefore unreasonable and unenforceable. See generally *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 538 (2) (a) (307 SE2d 914) (1983); *Gynecologic Oncology v. Weiser*, 212 Ga. App. 858, 859 (2) (443 SE2d 526) (1994).

Furthermore, the territory is not reasonably limited. Where the restriction is broad — for example, not limited to clients the employee served — the territorial limitation must be specified and closely tied to the area in which the employee actually worked. See *Chaichimansour*, supra at 70-71 (1); see generally *W. R. Grace*, supra at 466 (2); *Nunn v. Orkin Exterminating Co.*, 256 Ga. 558, 559 (1) (a) (350 SE2d 425) (1986); *Puritan/Churchill Chem. Co. v. McDaniel*, 248 Ga. 850, 851 (1) (286 SE2d 297) (1982); *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 184 (1) (236 SE2d 265) (1977). The noncompetition clause at issue neither limits itself to clients served by Kuehn nor specifies a territory closely tied to the area in which he worked. In fact, not only is the territory not closely tied to an area in which Kuehn worked, but the affected territory is not even specified. The covenant does not disclose the locations of the affected buildings or projects. See, e.g., *Guffey v. Shelnut & Assoc.*, 247 Ga. 667, 668 (278 SE2d 371) (1981). Indeed, SAI's clients could be performing under

current lease agreements in several counties or even several states. The burden imposed on Kuehn to determine where SAI's clients are and whether he is in violation of the covenant in accepting a particular client is unreasonable. See *Fuller v. Kolb*, 238 Ga. 602, 604 (234 SE2d 517) (1977). The covenant is therefore unreasonable in terms of territory. In light of either defect, that as to territory or duration, the entire restrictive covenant is unenforceable. See *Wolff*, supra.

We disagree with SAI's argument that the provision is reasonable because it is based on an administrative regulation promulgated by the Georgia Real Estate Commission. Assuming, without deciding, that a contractual provision is valid per se when it is based on an administrative regulation, the rule cited does not support SAI's argument.

The rule relied upon provides, in relevant part, that:

Whenever a licensee decides to terminate an affiliation with a firm, such licensee may not have any contact with any of the firm's clients that the licensee is serving under a listing, management agreement, or other brokerage engagement until the expiration of such a brokerage engagement. . . .

Official Compilation of Rules & Regulations of the State of Ga., Rule 520-1-.11 (6).

The rule prohibits contact with the firm's clients *that the licensee is serving*. Thus, the administrative rule relates only to the agent's actual clients, making it narrower than the contractual provision relied upon by SAI, which relates to the employer's clients. See generally *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 377-378 (1) (297 SE2d 473) (1982). The trial court erred in denying Kuehn's motion for partial summary judgment on the enforceability of the restrictive covenant.[1]

2. Kuehn claims the trial court erred in granting partial summary judgment to SAI on Kuehn's conversion claim because a jury issue was presented as to whether SAI and Selton would be liable for conversion. We disagree.

The contract provides that Kuehn is to be paid a percentage of the commissions generated by his efforts when the commission is received by SAI. Kuehn's conversion claim was properly struck because it was based on a mere failure to pay money due under a con-

---

[1] Kuehn also argues extensively about the enforceability of paragraph 27. However, SAI has not tried to enforce that provision, and it is not at issue in the case. Moreover, paragraph 27 is not enforceable if paragraph 26 is not enforceable. See *Ward v. Process Control Corp.*, 247 Ga. 583, 584 (2) (277 SE2d 671) (1981); *T. V. Tempo, Inc. v. T. V. Venture, Inc.*, 244 Ga. 776, 778 (262 SE2d 54) (1979).

tract. See *Faircloth v. A. L. Williams & Assoc.*, 206 Ga. App. 764, 766 (1) (426 SE2d 601) (1992). This is not the type of case for which a cause of action for conversion was intended. *Hodgskin v. Markatron, Inc.*, 185 Ga. App. 750, 751 (1) (365 SE2d 494) (1988).

3. Kuehn contends the trial court erred in denying his motion for partial summary judgment on SAI's claim that he misappropriated trade secrets and used confidential information to compete with SAI. This enumeration is without merit.

The contract provides that all client and business data are confidential and will not be given out without written authorization. In its counterclaim, SAI claimed that Kuehn misappropriated trade secrets by using SAI's client lease documents to execute transactions through AOR. Kuehn concedes that he used SAI's documents and information in connection with his work at AOR but says that SAI voluntarily gave him copies of those documents when he left and that he did not give the information to any third parties.

Kuehn conceded on deposition that the documents used are subject to the nondisclosure provision of the contract but argues that his use of the information while at AOR was not a breach, since he is AOR's sole employee and officer and so did not disclose the information to anyone. Kuehn overlooks the fact that a corporation possesses a legal existence separate and apart from that of its officers and shareholders. Despite Kuehn's attempt to be viewed as the alter ego of the corporation, he and AOR are considered separate legal entities. See *Clark v. Cauthen*, 239 Ga. App. 226, 227-228 (2) (520 SE2d 477) (1999). Whether he and the corporation should be treated as a single entity is generally a jury question. Id. Kuehn was not entitled to summary judgment on this issue.

Kuehn's argument that he was entitled to summary judgment on SAI's claim that he misappropriated trade secrets is also without merit. He contends that he cannot have misappropriated trade secrets when SAI *gave* him copies of the files. However, the Georgia Trade Secrets Act not only prohibits wrongful acquisition of trade secrets, it prohibits disclosure of trade secrets acquired under circumstances in which one has a duty to limit use of the information. OCGA § 10-1-761 (2) (B) (ii) (II), (III).

We point out that the parties make no argument as to whether the information at issue actually constitutes trade secrets. See OCGA § 10-1-761 (4). Indeed, we are not convinced that documents such as lease documents, which are often recorded as public documents, would generally come within the definition of trade secrets. And we note that while client lists may fall within the ambit of trade secrets, that is not inherently true of the information itself contained on the documents. *Crews v. Roger Wahl, C.P.A., P.C.*, 238 Ga. App. 892, 898, n. 4 (520 SE2d 727) (1999). In any event, Kuehn testified that he took

the files with the intent of using them to further SAI business. The trial court did not err in finding a genuine issue of material fact remained as to whether Kuehn misappropriated trade secrets and improperly used confidential information.

4. Kuehn argues that the trial court erred in granting SAI's motion for summary judgment on his oral contract claim and in failing to grant his summary judgment motion as to SAI's defenses based on the statute of frauds and the merger clause contained in the written agreement. Kuehn claims SAI orally agreed to pay him ten percent of the commissions SAI earned as a result of work performed by agents Kuehn recruited for SAI but that SAI failed to pay him his share of those commissions after the first year.

The court properly struck Kuehn's claim as to an oral agreement. Paragraph 28 of the written agreement provides that it is the entire agreement and that there are no prior oral agreements between the parties. The record shows that the subject of the alleged oral agreement was discussed before the parties signed the written contract. Since it was not included in the written agreement, Kuehn's claim is barred. See *Great American Builders v. Howard*, 207 Ga. App. 236, 240 (2) (427 SE2d 588) (1993). Furthermore, the statute of frauds barred any such agreement because it was not to be performed within a year. OCGA § 13-5-30 (5).

5. Kuehn contends the trial court erred in denying his motion for summary judgment on SAI's claims which were based on the alleged ineffectiveness of his oral termination of the contract.

SAI moved for partial summary judgment claiming, in part, that Kuehn breached the agreement by failing to properly notify SAI of his intention to stop working for SAI. Because Kuehn breached the agreement, SAI argued, he is precluded from relying on the agreement to seek relief, and SAI is entitled to recover from him damages it incurred as a result of his breach. Specifically, SAI contended it is entitled to share in commissions Kuehn received during 1995, the year of his ineffective resignation. Kuehn filed a cross-motion for summary judgment on the same issue, arguing that the resignation notice was effective, and moved for judgment on SAI's claims which were based on ineffective notice. The trial court ruled that Kuehn's resignation was effective and denied SAI's motion. At the same time, however, the trial court denied Kuehn's cross-motion for partial summary judgment based on this same issue by not expressly granting his motion and by stating in its order that it denied all motions not expressly granted. The trial court erred in not granting Kuehn's motion for summary judgment as to SAI's claims which were based on the ineffectiveness of the termination notice.

6. Paragraph 10 of the contract provides that if the contract is terminated, "any and all deals that have been started through SAI

will be finished through SAI and all commissions payable under the Contract shall continue for thirty (30) years."

SAI asserted in its counterclaim that Kuehn breached the agreement by not finishing through SAI all deals he started in 1995. The trial court ruled that Kuehn did not breach the contract in this regard. This ruling was predicated upon a dispute between Kuehn and SAI regarding what the language meant. After finding an ambiguity and applying the rules of contract construction, the trial court construed the language in favor of Kuehn and against SAI, the document's drafter. Having done that and finding no genuine issue of material fact remaining, the trial court precluded any recovery by SAI on this particular claim.[2] Although the trial court did not specifically address Kuehn's summary judgment motion on this issue, the court stated in its order that all motions not specifically addressed in the order are denied. However, upon finding that Kuehn did not breach the completion provision of the agreement, the trial court should have granted summary judgment to Kuehn on SAI's claims which were based on his failure to complete deals through SAI.

### Case No. A99A1905

7. SAI claims the trial court erred in finding that paragraph 10 of the contract, providing that any deals started through SAI must be finished through SAI, is ambiguous. SAI contends that, although the trial court made no such express finding, it did so implicitly by applying the rules of contract construction. We find no error.

In construing a contract, the trial court must first decide whether the contract language is ambiguous; if it is, the trial court must next apply the applicable rules of construction (OCGA § 13-2-2) to try to resolve the ambiguity. *Alpha Beta Dickerson Southeastern v. White Co.*, 235 Ga. App. 273, 274 (1) (509 SE2d 351) (1998). Contract language is ambiguous if it is duplicitous, indistinct or has an uncertain meaning. Id.

In this case, the provision is ambiguous. As Kuehn points out, the meaning of the language "all deals that have been started" is unclear. The contract does not define when a deal starts. Selton acknowledged in his deposition that the term is "a very difficult term to define" and that it can have different definitions. According to Kuehn, a deal starts when the agent meets with the landlord and the tenant together. Selton, on the other hand, believes a deal starts when the tenant retains the broker to handle the deal. The trial court did not err in determining that the phrase is ambiguous.

SAI further complains that even if an ambiguity does exist, the

---

[2] We address SAI's claim that this was error in Case No. A99A1905.

trial court erred in construing it against SAI based on SAI having authored the contract, because the evidence was in dispute regarding Kuehn's participation in the drafting of the contract.

We do not agree that a jury issue was presented here. Although Selton stated in his deposition that he and Kuehn drafted the agreement, he also said that he (Selton) drafted the contract and that Kuehn made changes to and discussed it. Selton could not recall what changes Kuehn made. Kuehn averred that the contract was a form contract and denied that he negotiated any changes to the contract or drafted any part of the contract. Even if, as SAI claims, Kuehn negotiated changes to and discussed the contract drafted by Selton, there is no evidence that Kuehn drafted or participated in the drafting of paragraph 10. The trial court did not err in construing the ambiguity against SAI. See generally *Stinson v. Artistic Pools*, 236 Ga. App. 768, 769 (1) (513 SE2d 510) (1999); *Chem Tech Finishers v. Paul Mueller Co.*, 189 Ga. App. 433, 435 (3) (375 SE2d 881) (1988).

*Judgment affirmed in Case No. A99A1905. Judgment affirmed in part and reversed in part in Case No. A99A1904. McMurray, P. J., and Phipps, J., concur.*

DECIDED MARCH 9, 2000 — 

*Kitchens, Kelley & Gaynes, Mark A. Kelley*, for appellant.
*Troutman Sanders, William M. Droze, Daniel S. Reinhardt*, for appellees.