## A02A1300. GALE INDUSTRIES, INC. v. O'HEARN.
(570 SE2d 661)

PHIPPS, Judge.

Gale Industries, Inc. (Gale) filed a complaint seeking to enjoin Troy O'Hearn from engaging in activities that it claimed violated the provisions of an Agreement to Preserve Corporate Opportunity (the Agreement). The trial court denied Gale's application for a temporary injunction as to most of the activities prohibited by the Agreement. O'Hearn subsequently moved for summary judgment, and the trial court granted his motion. Gale appeals the summary judgment order. We find that summary judgment was appropriate and affirm.

On December 9, 1997, Gale entered into an Asset Purchase Agreement with Moultrie Insulation and Betty O'Hearn, Moultrie Insulation's sole stockholder, whereby Gale purchased the assets of Moultrie Insulation. That same day, Gale entered into the Agreement and an Employment Agreement with Troy O'Hearn, the manager of Moultrie Insulation. Troy O'Hearn received $57,222 upon execution of the Agreement. O'Hearn testified that he signed the Agreement and the Employment Agreement because he was told that he had to sign them if he wanted to work for Gale. The Asset Purchase Agreement referenced both the Agreement and the Employment Agreement as ancillary agreements.

The Agreement provided that, for a period of five years, O'Hearn would not directly or indirectly engage in any restricted activities

within a 100-mile radius of Moultrie Insulation's location. The restricted activities included

> the marketing, sale, installation and servicing of insulation products, fireplaces, fireplace surroundings, mantles, gas logs and fireplace accessories, mirrors, glass blocks, garage doors, acoustical ceilings, shelving, tub enclosures, wardrobe doors, gutters, glass/glazing, storefronts, firestopping materials, caulking, sealants, waterproofing materials, and any other activities that either [Moultrie Insulation] or Gale has engaged in from time to time.

The Agreement also provided that, for a period of five years, O'Hearn would not supply products or provide services covered by the definition of restricted activities to former customers of Moultrie Insulation or purchase products covered by the definition of restricted activities from former suppliers of Moultrie Insulation within a 100-mile radius of Moultrie Insulation's location. O'Hearn was also prohibited from assisting others in engaging in restricted activities.[1]

When employed by Moultrie Insulation, O'Hearn sold and installed insulation. When employed by Gale, O'Hearn sold and installed insulation, fireplaces, surrounds, shelving, mirrors, bath accessories, miniblinds and seamless gutters.

O'Hearn admitted that, within the five-year period, he became part owner and an officer of Colquitt Insulation, which did business within a 100-mile radius of Moultrie Insulation. Colquitt Insulation's business included the marketing, sale and installation of insulation products and seamless gutters.

1. Gale claims that the Agreement was ancillary to the sale of Moultrie Insulation and that its restrictions are reasonable. It further claims that any restrictions found to be unreasonable should be severed and the remaining restrictions upheld.

A covenant entered into as part of the sale of a business can generally be drafted more broadly than one entered into as part of an employment contract.[2] "The rationale behind the distinction in analyzing covenants not to compete is that a contract of employment inherently involves parties of unequal bargaining power to the extent that the result is often a contract of adhesion. On the other hand, a contract for the sale of a business interest is far more likely to be one entered into by parties on equal footing."[3]

---

[1] The Agreement contains other restrictions that we will not address because Gale has not mentioned them on appeal.

[2] *Annis v. Tomberlin & Shelnutt Assoc.*, 195 Ga. App. 27, 30 (2) (392 SE2d 717) (1990).

[3] *Watson v. Waffle House*, 253 Ga. 671, 672 (2) (324 SE2d 175) (1985).

A different standard is applied in determining the validity of covenants contained in employment contracts and those which are a part of a contract to sell a business. When a portion of a covenant not to compete which is a part of a sale of a business interest is found to be unreasonable, the court has tended nevertheless to uphold the remaining portions of the covenant by "blue penciling" or severing the overly broad restrictions. On the other hand, the court has found covenants not to compete which are part of a contract of employment to be nonseverable and has held that overbreadth of one portion of the covenant so taints the entire covenant as to make it unenforceable.[4]

However, "if a contract for the sale of a business and an employment contract are part of the same transaction they may be construed together to supply missing elements and blue penciled to make overbroad terms valid."[5]

In *Lyle v. Memar*, the Supreme Court of Georgia determined that a sales agreement and an employment agreement were not part of the same transaction because they were not executed contemporaneously and were not between the same parties.[6] In *Drumheller v. Drumheller Bag & Supply*,[7] this court held that a stock purchase agreement and employment agreements entered into by stockholders who were parties to the stock purchase agreement were part of the same transaction. We are presented with a situation that does not fit into either category — contemporaneous agreements entered into between different parties with the sole stockholder not a party to the agreement at issue.

We find that the Agreement and the Asset Purchase Agreement cannot be construed together as part of the same transaction. The agreements do not involve the same parties or the same subject matter.[8] The Agreement is essentially a restatement of a provision of the Employment Agreement, whereas the Asset Purchase Agreement details the terms of the transfer of Moultrie Insulation's assets to Gale. In addition, unlike the situation in *Drumheller*, the party subject to the restrictive covenant at issue was not a stockholder in the company sold. Thus, Gale possessed superior bargaining power when it came to negotiating the terms of the Agreement with O'Hearn. We

---

[4] Id. at 671-672.

[5] *Lyle v. Memar*, 259 Ga. 209, 210 (378 SE2d 465) (1989).

[6] Id.

[7] 204 Ga. App. 623, 626-627 (1) (420 SE2d 331) (1992).

[8] Cf. *Moran v. NAV Svcs.*, 189 Ga. App. 825, 826 (1) (377 SE2d 909) (1989) (contemporaneous agreements between the same parties with relation to the same subject matter may be construed together).

therefore analyze the restrictive covenants found in the Agreement under the stricter standard applicable to employment agreements and will not "blue pencil" or sever any overbroad restrictions.

2. "Covenants not to compete in employment contracts are enforceable if they are reasonable in terms of duration, territorial coverage, and the scope of the activity precluded, considering the legitimate business interests the employer seeks to protect and the effect on the employee."[9]

Gale claims that O'Hearn violated the restriction precluding him from engaging in any restricted activities within a 100-mile radius of Moultrie Insulation's location. We find that restriction unreasonable in terms of territory. Moultrie Insulation was located approximately 60 miles from the Florida state line. While employed by Gale, O'Hearn did not perform sales or installation in or have contact with customers in Florida. "Where the restriction is broad — for example, not limited to clients the employee served — the territorial limitation must be specified and closely tied to the area in which the employee actually worked."[10] The restriction at issue is not limited to customers O'Hearn served or to the area where he actually worked. The 100-mile radius extends into Florida, where O'Hearn never performed services for Gale. In light of this defect, this restriction is unenforceable.[11]

Gale also contends that O'Hearn violated the Agreement by assisting others in engaging in restricted activities within a 100-mile radius of Moultrie Insulation's location and by doing business with current or former customers. Because both of these restrictions also contain the territorial limitation that we have determined to be unreasonable, they are also unenforceable.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED AUGUST 29, 2002 — 

*Ogletree, Deakins, Nash, Smoak & Stewart, Jay M. Barber, Erik S. Rodriguez*, for appellant.

*Whelchel, Whelchel & Carlton, James C. Whelchel*, for appellee.

---

[9] *Chaichimansour v. Pets Are People Too*, 226 Ga. App. 69, 70 (1) (485 SE2d 248) (1997).
[10] *Kuehn v. Selton & Assoc.*, 242 Ga. App. 662, 664 (1) (530 SE2d 787) (2000).
[11] See id. at 665.